*In re* MARRIAGE OF SHU YUAN LINDA CERVEN, Petitioner-Appellant, and ROBERT CERVEN, Respondent-Appellee.

Second District   No. 2—99—1019

Opinion filed December 20, 2000.

Eva W. Tameling, Kimberly A. Backman, and Andrea C. Zeitschel, all of Tameling & Associates, P.C., of Oak Brook, for appellant.

David M. Laz, of Westmont, for appellee.

PRESIDING JUSTICE BOWMAN delivered the opinion of the court:

Petitioner, Shu Yuan Linda Cerven, appeals from that portion of the dissolution judgment entered by the circuit court of Du Page County finding that she dissipated marital assets and ordering that she reimburse the marital estate for the dissipation. On appeal petitioner raises five issues that are based essentially on one theory, *i.e.*, that the trial court abused its discretion in determining that petitioner had dissipated marital funds when the evidence established that the funds in question had served a legitimate family purpose.

Petitioner and respondent, Robert Cerven, were married on May 8, 1973. Two children were born of the marriage, Gregory and Michael, ages 23 and 19, respectively, at the time of the dissolution judg-

ment. Petitioner filed a petition for dissolution of marriage on May 6, 1996. The date established for the breakdown of the marriage was November 30, 1994.

The evidence presented at trial established that during the marriage petitioner and the two children attended services at the Church of Jesus Christ of Latter Day Saints (Mormon church). According to petitioner, respondent never objected to the children's or her attendance and also never objected to his own attendance at special church events such as the children's baptisms, the spring social, and their son Greg's farewell service held prior to his mission.

After completing his first year at Brigham Young University, Greg had volunteered for a two-year church mission project in Japan. He served on his mission from October 1994 to July 1996. Following the completion of his mission work, he returned to college. It was petitioner's testimony that respondent was originally in favor of Gregory's going on a mission. Both Marilyn Brown, a member of petitioner's church congregation, and Dewitt Smith, bishop of the church's Wheaton Ward, testified regarding their recollection of respondent's presence at Greg's missionary farewell service. Brown recalled, as did Smith, that respondent was one of the speakers at the service. Brown related that respondent expressed his appreciation to the congregation and specifically to those church leaders who had been instrumental in helping his son to decide to serve a mission. According to Brown, respondent appeared very pleased as he spoke.

Smith's testimony was similar to Brown's. Smith also stated that respondent thanked petitioner for her role in his children's spiritual growth and development. At the time of the farewell service Smith wrote a missionary newsletter called the "Chicago Connection." In the September 1994 newsletter Smith described Greg's farewell service. Smith's account of respondent's remarks to the congregation was very similar to his testimony.

Brown also testified regarding respondent's attendance at church functions or events prior to Greg's farewell service. Brown stated that in a given year she attended approximately 50 events and that of those she attended respondent was present at about 4 to 6 functions. Petitioner would attend between 45 and 50 events per year.

Petitioner testified that both before and after the petition for dissolution was filed respondent never expressed any objection regarding the church. According to petitioner, respondent's first objection occurred when the parties were called upon to pay tithes to the church and to support Greg's mission.

Petitioner stated that she had been paying tithes to the church since 1984. A statement from the member and statistical records divi-

sion of the church's headquarters in Salt Lake City, which was admitted into evidence, indicated that petitioner made the following contributions from 1984 through 1987:

| Year | Tithing | Total Contributions |
|------|---------|---------------------|
| 1984 | $216.32 | $216.32 |
| 1985 | $331.55 | $331.55 |
| 1986 | $102.32 | $102.32 |
| 1987 | $399.19 | $399.19. |

In 1988, 1989, 1990, 1992, and 1993, petitioner gave no money to the church. In 1991 she gave $180. From 1994 through 1997 the following contributions were indicated:

| Year | Tithing | Total Contributions |
|------|---------|---------------------|
| 1994 | $1,236.35 | $1,921.35 |
| 1995 | $3,672.01 | $7,475.01 |
| 1996 | $3,853.56 | $5,232.68 |
| 1997 | $2,513.28 | $2,513.28. |

Petitioner stated that her payments increased in 1994 because she felt stronger about the church.

Petitioner said that during 1995 and 1996 she made payments both for tithes and for her son's mission. Petitioner explained that the money for tithing was given to needy people throughout the world while the rest of her contribution to the church was for her son's living expenses while on his mission. Petitioner said that she gave no money directly to her son. Rather, she gave money to the church, and the church gave it to him. It was petitioner's testimony that the sums recorded as total contributions in 1994, 1995, and 1996 represented both the monies she gave for tithing and the monies she contributed to defray the cost of her son's mission during those respective years.

Petitioner testified that before her son went on his mission she found out from the church the cost of the mission. She then told respondent she was going to start paying tithes every month. It was petitioner's testimony that respondent told her that he did not care if she paid tithes to the church as long as she used only her money. Petitioner presented no evidence to show how much she actually paid the church for Greg's mission work. The statement from the church regarding her tithes and total contributions stated that the church "provided no goods or services in consideration, in whole or in part, for the contributions listed; but only intangible religious benefits."

Respondent testified that he had never been a member of the Mormon church. Prior to Greg's farewell service, respondent had attended special events such as picnics a couple of times a year. He

never attended a church service. Respondent stated that he had not wanted Greg to go on a mission and had not intended to go to Greg's farewell service. He finally agreed to attend the service because Greg kept begging him to attend. Respondent said that he did not know that he was supposed to speak in front of the congregation and would not have agreed to attend the service if he had known. He agreed to speak because his son expressed his desire that respondent say something to the congregation. Respondent recalled that he wished his son good luck and expressed his sadness regarding Greg's departure. Respondent did not think he said what was reported in the Chicago Connection newsletter.

Respondent did not remember telling petitioner that it was "okay" to tithe with her money. According to respondent, the representatives of the Mormon church would regularly visit his home asking him to tithe. Respondent always told them that he was not a member of the church and that he was not interested in tithing. Respondent stated that he never agreed to give money to the church to support his son while he was on his mission.

Respondent recalled that the parties received a letter from the church asking that they give a certain sum each month because of their son's mission. Respondent stated that he told petitioner that he was not going to make any donations. He did not recall her saying that she intended to make the payments.

Quinton Smith, a friend and coworker of respondent's, testified that he had known respondent for about six years. During that period of time, he and respondent had talked frequently about the Mormons. Smith said that respondent had expressed his dislike of them and his unhappiness regarding his son "throwing away" his life to join the Mormon faith.

Jay Rickey, president of respondent's local union, testified that he had known respondent approximately 20 years. Rickey recalled having a conversation with respondent when respondent said that he did not like the idea that his wife was raising his children in the Mormon faith.

The trial court determined that the best evidence of the monies petitioner gave to the Mormon church was the statement furnished by the church's headquarters in Salt Lake City. That statement showed that petitioner had made minimal payments to the church prior to 1994. The court found that, given respondent's objection to the Mormon religion, the payments petitioner made from November 30, 1994, to the present time were not for a family purpose and therefore constituted dissipation of the marital estate in the amount of $16,438.54. The court ordered petitioner to reimburse the marital

estate in the amount of $7,397.34, which represented respondent's 45% portion of the marital assets.

Petitioner filed a motion to clarify the court's ruling prior to the entry of the dissolution judgment. Petitioner asked the court to distinguish the funds paid by petitioner for tithing from the funds paid for reimbursement of Greg's living expenses on his mission and to clarify whether the court intended that both were to be considered dissipation. The court denied the motion and subsequently entered the judgment for dissolution of marriage. This appeal ensued.

■ ■ Initially, we note that respondent, as appellee, has not filed a brief on appeal. However, we find that the record and appellant's brief are sufficient to allow us to address the merits of this appeal without the benefit of an appellee's brief. See *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976). We also note that, throughout most of the argument portion of her brief, petitioner fails to cite to the record so as to direct us to those places where her claims can be substantiated. This is a violation of Supreme Court Rule 341(e)(7) (177 Ill. 2d R. 341(e)(7)) and makes our review more onerous. We warn counsel for petitioner to adhere to Rule 341(e)(7) in the future.

Petitioner contends that the trial court abused its discretion in finding that the monies she contributed to her church subsequent to the breakdown of the marriage were not for a family purpose and, consequently, constituted dissipation of the marital assets.

■ Dissipation is generally defined as the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown. *In re Marriage of Charles*, 284 Ill. App. 3d 339, 343 (1996). A finding of dissipation is possible even if the dissipating party did not derive personal benefit from the dissipation of the assets. *In re Marriage of Gurda*, 304 Ill. App. 3d 1019, 1025 (1999). Whether a given course of conduct constitutes dissipation depends upon the facts of each case. *In re Marriage of Hahin*, 266 Ill. App. 3d 168, 171 (1994). The spouse charged with dissipation has the burden of proving, by clear and convincing evidence, how the marital funds were spent. *Gurda*, 304 Ill. App. 3d at 1026. Based on the credibility of the witnesses, the trial court decides if the funds were spent for legitimate family expenses, which were necessary and appropriate. *Gurda*, 304 Ill. App. 3d at 1026. The trial court's determination regarding dissipation will not be reversed on appeal absent an abuse of discretion, which occurs only when no reasonable person could adopt the trial court's view. *Hahin*, 266 Ill. App. 3d at 171.

■ Petitioner maintains that the statement provided from the

Mormon church regarding tithes and total contributions paid for the years 1994 through 1996 established that the difference between the two amounts constituted the reimbursement of living expenses incurred by Greg during his mission in Japan and that this reimbursement was a legitimate and necessary family expense. Petitioner, however, failed to prove by clear and convincing evidence that the difference between the two sums equaled monies for reimbursement. Except for the statement, petitioner provided no other evidence to show that, in fact, she made payments for those expenses. No canceled checks for the years 1994 through 1996 were entered into evidence to show what sums petitioner contributed to the church, how frequently they were contributed, and whether some monies were earmarked specifically for tithing and others for the alleged reimbursement.

Moreover, the financial statement from the church on which petitioner relies states that the "Church provided no goods or services in consideration, in whole or in part, for the contributions listed; but only intangible religious benefits." Such a statement would seem to belie petitioner's position that part of the money she was donating was for the purpose of reimbursing the church for the housing and food the church provided for Greg during his mission. Furthermore, petitioner testified that she gave money to the church for her son and that the church gave the money to him. If this were true, there would be no reason to reimburse the church.

We conclude that, because petitioner failed to prove that some of her total contributions to the church in 1994 through 1996 were for the reimbursement of her son's living expenses in Japan, she did not establish that the difference between the amount for tithing and the amount for her total contribution during those years constituted a legitimate family expense.

■ Petitioner also maintains that the monies paid for reimbursement and tithing came from the income she received from her employment. However, petitioner's income, as well as respondent's income, constituted property acquired during the marriage and therefore was part of the marital estate. *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641-42 (1993). Consequently, unless petitioner could show that the monies expended to the church were for a family purpose, the payments constituted dissipation. In this particular case, in order to show that the monies she paid to the Mormon church were for a family purpose, it would be necessary for petitioner to establish that respondent had agreed to her tithing and other contributions. The trial court found that respondent's past record of involvement with the Mormon church and his testimony showed that he objected to the Mormon religion and that, therefore, the funds expended after the breakdown

of the marriage in 1994 could not be considered as for a family purpose. We agree.

The evidence established that respondent was not a member of the Mormon church, that he attended few Mormon functions or events during a given year and none after his son's farewell service in August 1994, and that he had never attended a church service. Respondent testified that, when representatives of the church visited the parties' home and asked him to tithe, he expressed his disinterest. Although petitioner maintains she began tithing in 1984 and although there was no evidence indicating whether respondent objected to her tithing prior to the breakdown of the marriage, there was, as the trial court correctly pointed out, no sufficient pattern of payment before the breakdown. Rather, petitioner made minimal contributions from 1984 through 1987 and in 1991 and no contributions whatsoever in the years 1988, 1989, 1990, 1992, and 1993.

While petitioner testified that she had told respondent, prior to their son's mission, that she was going to start paying tithes every month and that respondent had indicated that he did not object as long as she used her own money, respondent testified that he did not recall making such a statement. At any rate, such a statement, if made, would demonstrate respondent's objection to the use of marital funds to pay for tithing to the Mormon church. Accordingly, petitioner did not establish that respondent had agreed to her tithing and contributions and, thus, did not establish that these monies were expended for a family purpose.

■ Petitioner maintains that, based on the doctrine of equitable estoppel, respondent should have been precluded from asserting that he objected to petitioner's donations and reimbursements to the Mormon church. Petitioner contends that the court erred in failing to apply the doctrine.

We find nothing in the record, however, to indicate that the theory of equitable estoppel was raised in the trial court. If petitioner argued that theory in her closing argument, that is not apparent to us. The court ordered the parties to submit written closing arguments. The record contains respondent's closing argument but not petitioner's. The record contains only a notice that petitioner filed the closing argument. The appellant bears the burden of providing a sufficient record to support a claim of error. *In re Marriage of Delk*, 281 Ill. App. 3d 303, 307 (1996). Also, a theory not espoused in the trial court may not be considered on review. *Allen v. Allen*, 226 Ill. App. 3d 576, 587 (1992). Accordingly, we will not address petitioner's equitable estoppel issue.

■ Petitioner also contends that the court erred in accepting the

veracity of respondent's testimony regarding his objection to the Mormon church in light of the testimony of other witnesses, in particular respondent's witnesses, Jay Rickey and Quinton Smith, and petitioner's witness, Marilyn Brown. However, our review of the record convinces us that petitioner has been very selective in presenting only those portions of the witnesses' testimony that favor her. Also, she has distorted testimony in an effort to demonstrate that respondent testified falsely. For example, petitioner states that respondent testified that he had "*no* involvement with the church" and cites to a page in the record in support of this statement. (Emphasis added.) However, the page cited does not support petitioner's statement. Petitioner then states that respondent's alleged testimony that he had no involvement with the church was proven false by his subsequent admission that he had attended his son Greg's farewell service. However, prior to this testimony, respondent admitted that, before the breakdown of the marriage, he had attended a couple of special functions or events each year. Consequently, we do not believe he testified that he had no involvement as petitioner claims.

Additionally, some of petitioner's statements regarding respondent's credibility, *e.g.*, that he testified falsely when he said that "he did not attend Greg's farewell service," are not supported by any citation to the record. From our review of the record, we did locate a response by respondent wherein he denied attending the farewell service. However, his subsequent responses to questions regarding his attendance indicates some confusion regarding the year to which petitioner's counsel was referring when she posed her original question pertaining to his attendance. Once it was established that she was referring to 1994, respondent admitted attending the service and speaking after his son Greg requested that he do so. We do not believe that this testimony placed his credibility into issue as petitioner claims.

It is the trial court's function to resolve conflicting testimony by assessing the credibility of the witnesses and the weight to be accorded their testimony, and this court will not disturb the trial court's finding in this regard unless it is against the manifest weight of the evidence. *In re Marriage of Landfield*, 209 Ill. App. 3d 678, 697 (1991). Here, it is clear from the trial court's findings that it chose to believe respondent rather than petitioner regarding the issue of his objection to the Mormon church. After careful review of the record, we find that the record contains sufficient evidence to support the trial court's conclusion.

■ Last, we address petitioner's contention that the trial court interfered in her free exercise of religion when it found that tithe payments made to the Mormon church constituted dissipation. According

to petitioner, such payments were a requirement of her religion because she was not allowed "to go to temple" if she did not pay her tithes.

There is no indication in the record whether petitioner argued to the trial court that a finding that her tithe payments constituted dissipation would preclude her from freely exercising her choice of religion. In one brief paragraph in her motion for clarification of the trial court's ruling, petitioner merely states that the court "blurred" the separation between church and state when it found that monies she donated to the church and paid for reimbursement for her son Greg's living expenses constituted dissipation. Petitioner presented no argument on this point nor cited any case law.

Here, on appeal, petitioner presents a theory that, based on the record before us, was never really raised in the trial court. As noted earlier in this disposition, a theory not espoused in the trial court may not be considered on review. *Allen*, 226 Ill. App. 3d at 587. At any rate, petitioner has cited no relevant case law. Petitioner's reference to a bankruptcy case where the court determined that not allowing the plaintiffs to tithe would substantially burden the plaintiffs' exercise of their religion is inapposite to our case. In the present case the court did not determine that petitioner was not allowed to tithe but only that she could not tithe with monies that were part of the marital assets. Consequently, we do not believe that the court's determination amounted to a substantial burden on petitioner's religious observance.

Based on the record before us, we cannot conclude that no reasonable person could adopt the trial court's view regarding petitioner's dissipation of the marital estate.

Accordingly, for the reasons set forth above, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

GEIGER and HUTCHINSON, JJ., concur.