IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 8, 2005 Session

## LISA R. ALTMAN v. ALAN ALTMAN

**Appeal from the Chancery Court for Montgomery County**
**No. 2001-12-0021     Carol A. Catalano, Chancellor**

**No. M2003-02707-COA-R3-CV - Filed April 7, 2005**

This appeal involves the division of marital property. Following almost fifteen years of marriage, both the husband and the wife sought a divorce in the Chancery Court for Montgomery County. The trial court, disregarding the marital dissolution agreement and quitclaim deed that the husband induced the wife to sign following their separation, awarded 58.5% of the marital estate to the husband and the remainder to the wife. The husband asserts on this appeal that the trial court erred by declining to follow the marital dissolution agreement and by overvaluing the marital property. We find that the trial court properly ignored the marital dissolution agreement and the quitclaim deed and that its valuation of the marital property is supported by the evidence. We have also determined that the manner in which the trial court divided the marital property was equitable.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Gregory D. Smith, Clarksville, Tennessee, for the appellant, Alan Altman.

Michael K. Williamson, Clarksville, Tennessee, for the appellee, Lisa R. Altman.

**OPINION**

**I.**

Alan Altman and Lisa Altman were married in September 1986 in Nashville. They separated in March 2001, and Ms. Altman filed for divorce in the Chancery Court for Montgomery County in December 2001. In June 2003, after Ms. Altman's original lawyer withdrew from the case, Mr. Altman convinced Ms. Altman to sign a marital dissolution agreement and quitclaim deed conveying substantially all of the parties' assets to him. He recorded the quitclaim deed immediately but waited until the day of trial, October 6, 2003, to file the marital dissolution agreement, along with his answer and counterclaim for divorce.

Ms. Altman's new lawyer, who was unfamiliar with the marital dissolution agreement and the quitclaim deed, informed the trial court that his client no longer agreed to the marital dissolution agreement. The trial court decided that the marital dissolution agreement was not binding on the parties until accepted by the trial court and declined to give it any effect because Ms. Altman no longer agreed to it. Since both parties desired a divorce, the remainder of the trial focused on the parties' disputes regarding the classification and valuation of the marital property. Their most significant disagreement related to the value of the marital residence, which had been destroyed by a tornado. The court valued the total marital estate at $126,622.95, which included the proceeds of the insurance settlement[1] and the value of the real property minus the two mortgages on the property, totaling $68,383.95.[2]

The trial court determined that the marital estate should be divided in an "approximately 50/50 split" between the parties after taking into consideration (1) that Mr. Altman had been paying the mortgage on the marital home, (2) that Ms. Altman had owned and operated a money losing consignment business for eight years, (3) that Mr. Altman had used marital funds to pay tax obligations and other debts of Ms. Altman's business, and (4) that Ms. Altman had contributed separate assets to the marriage, including a $67,900 inheritance. Accordingly, the trial court awarded Mr. Altman 58.5% of the net marital estate and awarded Ms. Altman the remaining 41.5%.

Mr. Altman has appealed despite receiving more than one-half of the marital estate. He insists that the trial court erred by declining to divide the marital estate in accordance with the marital dissolution agreement and that the trial court erred in its valuation of the marital residence. Ms. Altman asserts that she should have been awarded a larger portion of the marital estate and that Mr. Altman should be required to pay her legal expenses for this appeal.

## II.
### THE EFFICACY OF THE MARITAL DISSOLUTION AGREEMENT

Mr. Altman first takes the trial court to task for failing to use the marital dissolution agreement to guide its division of the marital estate. This argument overlooks the fact that Ms. Altman unequivocally repudiated the marital dissolution agreement before the trial started. The effect of Ms. Altman's action was to undermine the enforceability of the marital dissolution agreement and to free the trial court to make its own equitable division of the marital estate.

Martial dissolution agreements are contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001); *Wade v. Wade*, 115 S.W.3d 917, 924 (Tenn. Ct. App. 2002). They provide a vehicle for divorcing parties to, among other things, provide "for the equitable settlement of any property rights between the parties." *See* Tenn. Code Ann. § 36-4-103(b) (2001). While these contracts

---

[1]Mr. Altman asserts in his brief that the insurance proceeds totaled $103,000. However, the insurance proceeds actually totaled $109,500, which included $103,000 for the parties' house, $4,500 for their kennel, and $2,000 for their barn. The trial court used this amount in all of its calculations.

[2]$109,500.00 [insurance proceeds] + $90,000.00 [value of real property] - $131,116.05 [balance of outstanding mortgages] = $68,383.95.

become absolutely binding and enforceable after approval by the trial court, this court has recognized that parties may be permitted to withdraw from these agreements before they have been approved by the court, as long as one or both parties have not relied on the agreement to their detriment. *Denbow v. Denbow*, No. 02A01-9410-CH-00238, 116 WL 243894, at *1-2 (Tenn. Ct. App. May 9, 1996) (No Tenn. R. App. P. 11 application filed); *Sutton v. Sutton*, No. 03A01-9309-CH-00315, 1994 WL 108927, at *1 (Tenn. Ct. App. Mar. 31, 1994) (No Tenn. R. App. P. 11 application filed).[3]

This record contains no evidence of detrimental reliance on the marital dissolution agreement by either of the Altmans. Accordingly, the trial court did not err by refusing to enforce the property settlement provisions in the agreement after Ms. Altman unequivocally repudiated it. While Mr. Altman remained free to argue that the marital dissolution agreement's disposition of the marital property was fair and equitable, the trial court had the prerogative to come up with its own equitable division of the marital estate based on the facts.

### III.
### THE SIGNIFICANCE OF THE QUITCLAIM DEED

Mr. Altman also insists that the trial court erred by awarding Ms. Altman an interest in the real property where the marital home had been located and in the insurance proceeds resulting from the destruction of the home. He argues that Ms. Altman quitclaimed her interest in this property to him and, therefore, that the property should not have been included in the marital estate. This argument overlooks the important principle that the classification of property does not depend on the state of its record title but on the conduct of the parties. *Mondelli v. Howard*, 780 S.W.2d 769, 774 (Tenn. Ct. App. 1989). Thus, the courts will consider all the parties' legal and equitable interests in property when they are called upon to divide the marital estate. *Jones v. Jones*, 597 S.W.2d 886 (Tenn. 1979).

Both the marital dissolution agreement and the quitclaim deed are transparent attempts by Mr. Altman to keep the parties' marital home out of their marital estate. Neither accomplished their desired effect because no matter where the current legal title to the property lies, the property remains marital property because it was the parties' home. Accordingly, the trial court properly classified both the real property where the house once stood and the insurance proceeds from the destruction of the house as marital property.

### IV.
### THE VALUATION OF THE MARITAL RESIDENCE

Finally, Mr. Altman asserts that the trial court erred in its valuation of the marital residence by refusing to base its calculation on the cost of replacing the home. Relying on some creative mathematics, he insists that the value of the marital residence is $54,500 – the difference between

---

[3]Some commentators have argued that parties who sign a marital dissolution agreement should be estopped to repudiate it even in the absence of part performance or receipt of benefits. *See* JANET LEACH RICHARDS, RICHARDS ON TENNESSEE FAMILY LAW § 13-7(c) (2d ed. 2004).

the combined value of the insurance proceeds and the real property and cost he will incur to rebuild the home.[4] We disagree with this approach to valuation for two reasons. First, the value of the marital residence is determined at the time of the divorce, and the future costs associated with rebuilding the home are simply not part of the equation. *See* Tenn. Code Ann. § 36-4-121(b)(1)(A) (Supp. 2004) ("[a]ll marital property shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property"). Second, Mr. Altman's suggested calculation fails to take the outstanding mortgages on the marital residence into consideration.

## V.
### THE EQUITABLE DIVISION OF THE MARITAL ESTATE

Ms. Altman complains that she should have received a larger share of the marital estate. She insists that the trial court unfairly awarded her only 41.5% of the marital estate because the court improperly viewed her failed consignment business as dissipation of marital assets. While we have determined that the evidence does not support the trial court's conclusion that Ms. Altman dissipated marital funds in the operation of her consignment business, we find that the manner in which the trial court divided the marital estate was equitable based on the factors in Tenn. Code Ann. § 36-4-121(c).

### A.
### Mr. Altman's Dissipation Claim

Among the factors that courts may consider when fashioning an equitable division of a marital estate is a party's dissipation of the marital or separate property. Tenn. Code Ann. § 36-4-121(c)(5). Even though no statutory definition of "dissipation" exists, the term has a common meaning in the context of divorce. The concept of dissipation is based on waste. *Ward v. Ward*, No. W2001-01078-COA-R3-CV, 2002 WL 31845229, at *3 (Tenn. Ct. App. Dec. 19, 2002) (No Tenn. R. App. P. 11 application filed). Dissipation of marital property occurs when one spouse uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down. *See, e.g.*, *In re Marriage of Cerven*, 742 N.E.2d 343, 348 (Ill. App. Ct. 2000); *Goodman v. Goodman*, 754 N.E.2d 595, 598 (Ind. Ct. App. 2001); *Allison v. Allison*, 864 A.2d 191, 195 (Md. Ct. Spec. App. 2004); *Kittredge v. Kittredge*, 803 N.E.2d 306, 317 (Mass. 2004); *Budnick v. Budnick*, 595 S.E.2d 50, 58 (Va. Ct. App. 2004). Dissipation involves intentional or purposeful conduct, *Stock v. Stock*, 693 So. 2d 1080, 1084 (Fla. Dist. Ct. App. 1997); *K. v. B.*, 784 N.Y.S.2d 76, 90 (App. Div. 2004), that has the effect of reducing the funds available for equitable distribution. *See In re Marriage of Miller*, 796 N.E.2d 135, 141 (Ill. Ct. App. 2003); *Goodman v. Goodman*, 754 N.E.2d at 598; *Jeffcoat v. Jeffcoat*, 649 A.2d 1137, 1142 (Md. Ct. Spec. App. 1994).

Whether a particular course of conduct constitutes a dissipation depends on the particular facts of the case. *In re Marriage of Cerven*, 742 N.E.2d at 348; *Solomon v. Solomon*, 857 A.2d 1109, 1112 (Md. 2004); *Kittredge v. Kittredge*, 803 N.E.2d at 316. The party claiming that

---

[4] $199,500 [the insurance proceeds + the value of the real property] – $145,000 [the cost of rebuilding the house] = $54,500.

-4-

dissipation has occurred has the burden of persuasion and the initial burden of production. After the party alleging dissipation establishes a prima facie case that marital funds have been dissipated, the burden shifts to the party who spent the money to present evidence sufficient to show that the challenged expenditures were appropriate. *Wiltse v. Wiltse*, No. W2002-03132-COA-R3-CV, 2004 WL 1908803, at *4 (Tenn. Ct. App. Aug. 24, 2004) (No Tenn. R. App. P. 11 application filed); *see also Bratcher v. Bratcher*, 26 S.W.3d 797, 799 (Ky. Ct. App. 2000); *Turner v. Turner*, 809 A.2d 18, 52 (Md. Ct. Spec. App. 2002); *Anderson v. Anderson*, 514 S.E.2d 369, 380 (Va. Ct. App. 1999).

An equitable division of marital property requires a thoughtful consideration of all the relevant factors listed in Tenn. Code Ann. § 36-4-121(c). *Flannary v. Flannary*, 121 S.W.3d 647, 650-51 (Tenn. 2003); *Kinard v. Kinard*, 986 S.W.2d 220, 230-31 (Tenn. Ct. App. 1998). Dissipation is not a separate factor. To the contrary, the allegedly improper or wasteful expenditure or transaction must be considered in the context of the marriage as a whole, and it must be weighed along with all the other relevant factors in the case. *Kittredge v. Kittredge*, 803 N.E.2d at 316. The factors that courts most frequently consider when determining whether a particular expenditure or transaction amounts to dissipation include: (1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or were contemplating divorce;[5] (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert a marital asset. *Halkiades v. Halkiades*, No. W2004-00226-COA-R3-CV, 2004 WL 3021092, at *4 (Tenn. Ct. App. Dec. 29, 2004); *Wiltse v. Wiltse*, 2004 WL 1908803, at *4; *Ward v. Ward*, 2002 WL 31845229, at *3; *see also Thompson v. Thompson*, 811 N.E.2d 888, 914 (Ind. Ct. App. 2004).

Mr. Altman's dissipation claim focuses on the unsuccessful consignment business that Ms. Altman operated for eight years during the marriage. Before the business finally closed down, the parties were required to use marital funds to pay business taxes and other operating expenses. Simple mismanagement of family finances is not dissipation, *Cornell v. Smith*, 616 So. 2d 629, 630 n.3 (Fla. Dist. Ct. App. 1993), nor is using marital funds to prop up a failing business. *McDavid v. McDavid*, 511 S.E.2d 365, 368 (S.C. 1999). As far as this record shows, Ms. Altman started this business long before the parties began experiencing marital problems. Mr. Altman was aware of the business and was directly involved in the decision to use marital funds to pay its taxes and to defray its operating expenses. Because Mr. Altman failed to present any evidence that Ms. Altman started or operated her business for the purpose of depleting the marital estate, the trial court erred by characterizing Ms. Altman's management of the business as "dissipation" for the purpose of Tenn. Code Ann. § 36-4-121(c)(5).

---

[5]The timing of the expenditure or transaction is extremely relevant. It is unlikely that expenditures that were typical or commonplace during the marriage will constitute dissipation, especially when the other spouse acquiesced in them. *Askinazi v. Askinazi*, 641 A.2d 413, 416 (Conn. Ct. App. 1994); *Rosenfeld v. Rosenfeld*, 597 So. 2d 835, 836-37 (Fla. Dist. Ct. App. 1992); *Bojrab v. Bojrab*, 786 N.E.2d 713, 728 (Ind. Ct. App. 2003).

## B.
## The Division of the Marital Estate

Our decision that the evidence does not support the trial court's conclusion that Ms. Altman dissipated marital assets by continuing to operate her consignment business does not necessarily undermine the validity of the manner in which the trial court divided the parties' marital estate. In the final analysis, the appropriateness of the trial court's division depends on its results. *Bolin v. Bolin*, 99 S.W.3d 102, 107 (Tenn. Ct. App. 2002); *Watters v. Watters*, 959 S.W.2d 585, 591 (Tenn. Ct. App. 1997). Based on our analysis of the evidence in light of the factors in Tenn. Code Ann. § 36-4-121(c), we have determined that awarding Ms. Altman 41.5% of the marital estate was equitable.

Trial courts have wide latitude in fashioning an equitable division of marital property, *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983); *Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001), and appellate courts accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Edwards v. Edwards,* 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). Thus, we will ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown v. Brown,* 913 S.W.2d 163, 168 (Tenn. Ct. App. 1994); *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

A division of marital property is not rendered inequitable simply because it is not precisely equal. *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002); *Cohen v. Cohen*, 937 S.W.2d 823, 832 (Tenn. 1996). It is essentially undisputed that Mr. Altman's income provided most of the parties' cash flow during the marriage and that he continued to pay the mortgages on the parties' real property during the two years between the parties' separation and the final divorce hearing. These mortgage payments enabled the parties to maintain and preserve the most valuable asset in the marital estate. The evidence regarding Mr. Altman's financial contributions to the marriage provide a sufficient basis for awarding Mr. Altman a larger share of the marital estate.

## VI.

We affirm the October 27, 2003 final decree of divorce and remand the case to the trial court for whatever further proceedings may be required. We also decline to award Ms. Altman her attorney's fees for this appeal and tax the costs, in equal proportions, to Alan Altman and his surety and to Lisa R. Altman for execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.