T.C. Summary Opinion 2017-88

UNITED STATES TAX COURT

J. DREW KOESTER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 31028-14S.                    Filed December 4, 2017.

J. Drew Koester, pro se.

<u>Martha Jane Weber</u>, for respondent.

SUMMARY OPINION

HALPERN, <u>Judge</u>:  This case was heard pursuant to the provisions of

section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]

---

[1]Hereinafter, unless otherwise stated, all section references are to the
Internal Revenue Code of 1986, as amended.

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency of $4,041 in petitioner's 2012 Federal income tax.  Petitioner had reported his 2012 Federal income tax on Form 1040, U.S. Individual Income Tax Return.  Respondent examined the return and made an adjustment reducing petitioner's deduction for alimony paid from $51,147 to $39,600, an adjustment of $11,547.  Respondent made the adjustment because he did not believe that a payment of that amount--equal to a portion of the employment-related bonus that petitioner received in 2012--constituted deductible alimony.  Petitioner assigned error to the adjustment.  The only question for decision is whether the $11,547 payment is deductible as alimony.

## Background

The parties have stipulated certain facts and the authenticity of certain documents. The facts stipulated are so found, and documents stipulated are accepted as authentic.  Petitioner bears the burden of proof.  See Rule 142(a)(1),

Tax Court Rules of Practice and Procedure.[2]  Petitioner resided in Tennessee when he filed the petition.

Petitioner's ex-wife filed for divorce with the Chancery Court for the 30th Judicial District of Memphis (chancery court), Shelby County, Tennessee, sometime before the year at issue.  After the filing, petitioner and his ex-wife executed a Marital Dissolution Agreement on January 4, 2010 (MDA), providing, among other things, for the distribution of property and for support.  Petitioner's ex-wife was represented by counsel during the divorce proceedings, but petitioner was not.  Counsel for petitioner's ex-wife drafted the MDA.

The MDA provides the following:

<u>Incorporation, Permanent and Pendente Lite</u>

All such parts of this Agreement as might be material, except those that might be lessened or destroyed, shall be incorporated in the Final Decree.  Pending the entry of the Final Decree, the parties agree to the filing of this Agreement and, by said filing, specifically consent to and authorize the entry of a Consent Order binding them to the terms of this Agreement.  By the signing of this Agreement, the parties stipulate to these terms being enforceable as if they were, at the moment of signing, an Order of this Court.

---

[2]Petitioner has not raised the applicability of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations.  We conclude that sec. 7491(a) does not apply here because petitioner has not produced any evidence that he has satisfied the preconditions for its application.

The record does not contain a final decree of divorce from the Chancery Court. The parties have not argued that the MDA was ineffective for 2012 and have proceeded on the premise that it was both binding and enforceable in 2012.

The MDA contains specific provisions regarding the division of the following property: (1) real estate, (2) personalty, (3) automobiles, (4) section 401(k) plan benefits, (5) brokerage accounts, (6) stocks/profit interest units, and (7) bank accounts. Petitioner conveyed his interest in the couple's real estate, which was subject to debt, to his ex-wife. In turn, petitioner's ex-wife was to refinance the debt on the real estate to remove petitioner from the debt and, within 30 days of doing so, had to pay petitioner $35,000 for his marital interest in the real estate. Petitioner received 43.9% and his ex-wife received 56.1% of the aggregate value of the section 401(k) plan benefits, brokerage accounts, stocks/profit interest units, and bank accounts.

The MDA also contains specific provisions awarding petitioner's ex-wife two forms of support. Petitioner was required to pay, and hold his ex-wife harmless for, three unsecured debts "as non-deductible, non-dischargeable alimony in solido" because payment of the debts was necessary for his ex-wife's support. The MDA also contains the following provision regarding petitioner's obligation to pay what it describes as "transitional alimony" (alimony provision):

## Alimony

Husband shall pay to Wife as transitional alimony in the amount of Three Thousand Three Hundred Dollars ($3,300.00) per month on or before the fifth day of each month. Husband agrees to pay the transitional alimony beginning the first month immediately preceding the entry of the Final Decree of Divorce and each and every month thereafter through August 31, 2015.

Lastly, the MDA contains a specific provision for the division of petitioner's bonus income (bonus provision):

## Husband's Bonus Income

Wife shall be entitled to a portion of Husband's bonus income beginning the month immediately preceding the entry of the Final Decree of Divorce through August 31, 2015, as a division of marital property. The parties agree that fifty (50%) percent [sic] of each bonus during said time frame will be applied to the parties' minor son's college education fund, and the remainder of each bonus will then be split equally between the parties.

At the time petitioner and his ex-wife executed the MDA, his monthly gross income was $17,226 and her monthly gross monthly income was zero. Petitioner agreed to pay his ex-wife monthly child support of $1,547 and to pay for his son's private school tuition through grade 12. Petitioner and his ex-wife agreed to divide equally the expense of an automobile for their son and the balance of any college tuition expenses for their son not covered by an education savings account established for his benefit.

In 2012 petitioner received from his employer a bonus payment, net of taxes and deductions, of $46,190, and, in that year, in accordance with the bonus provision, he paid his ex-wife $11,547 (bonus payment). Respondent denied petitioner the deduction for alimony paid that he claimed on account of the bonus payment.

## Discussion

Section 215(a) allows a taxpayer a deduction for alimony payments made during the taxable year. The term "alimony" is defined for purposes of section 215(a) as any payment of alimony that is includible in the income of the recipient under section 71. See sec. 215(b). In pertinent part, section 71(b)(1) defines an alimony payment as any payment in cash that satisfies the following four requirements:

(A) such payment is received by (or on behalf of) a spouse under a divorce or separation instrument;

(B) the divorce or separation instrument does not designate such payment as a payment which is not includible in gross income under this section and not allowable as a deduction under section 215;

(C) in the case of an individual legally separated from his spouse under a decree of divorce or of separate maintenance, the payee spouse and the payor spouse are not members of the same household at the time such payment is made; and

(D) there is no liability to make any such payment for any period after the death of the payee spouse and there is no liability to make any payment (in cash or property) as a substitute for such payments after the death of the payee spouse.

The bonus payment was made pursuant to the bonus provision. Respondent concedes that the bonus payment satisfied the requirements of section 71(b)(1)(A), (B), and (C). That leaves the question of whether petitioner's obligation to make payments under the bonus provision would have continued if his ex-wife had died before August 31, 2015, the scheduled end of petitioner's obligation to make the payments. If his obligation would have continued, then the bonus provision failed to satisfy the requirement of section 71(b)(1)(D) that there be no liability to make a payment for any period after the death of the payee ex-spouse. And if it failed to satisfy that requirement, then the bonus payment would not qualify as the payment of alimony within the meaning of section 71.

On the face of it, the bonus provision is absolute as to the term of the ex-spouse's entitlement to a share of petitioner's bonus income, viz, "through August 31, 2015," and it does not provide for the earlier termination of petitioner's obligation to make the payments if the ex-wife should die. Nevertheless, to determine whether petitioner's obligation to make payments under the bonus provision would survive the death of petitioner's ex-wife, we must look beyond the

terms of the bonus provision to the law of the State of Tennessee. See Morgan v. Commissioner, 309 U.S. 78, 80 (1940) ("State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed."); Megibow v. Commissioner, T.C. Memo. 1998-455, 98 WL 901532, at *2.[3] Payments that cease upon the payee's death by operation of State law can still qualify under section 71 for special tax treatment under section 215 "despite the parties' failure to specify in the divorce instrument that the payments terminate upon the payee's death." Hoover v. Commissioner, 102 F.3d 842, 846 (6th Cir. 1996), aff'g T.C. Memo. 1995-183.

The Supreme Court of Tennessee has characterized a marital dissolution agreement as "a contract entered into by a husband and wife in contemplation of

---

[3]The Court noted in Rogers v. Commissioner, T.C. Memo. 2005-50, 2005 Tax Ct. Memo LEXIS 49, at *4-*5:

> Limiting deductibility to obligations that end with the death of the payee stops taxpayers from disguising property settlements as alimony. But one recurring problem has been how to tell whether a particular obligation to pay alimony really would stop at death. For a time, the Code had a strict bright-line test: deductibility was denied unless there was an express provision in the divorce decree or separation instrument itself ending payments upon the death of the payee spouse. 26 U.S.C. sec. 71(b)(1)(D) (1984). In 1986, though, Congress softened section 71(b) to allow deductibility without such an express provision, but only if state law would end the obligation at death anyway.

divorce." E.g., Eberbach v. Eberbach, __ S.W.3d __, 2017 WL 2255582, at *3 (Tenn. May 23, 2017). As such, it "provide[s] a vehicle for divorcing parties to, among other things, provide 'for the equitable settlement of any property rights between the parties.'" Altman v. Altman, 181 S.W.3d 676, 680 (Tenn. Ct. App. 2005) (quoting Tenn. Code Ann. sec. 364-103(b) (2001)).

> As a contract, a MDA generally is subject to the rules governing construction of contracts. * * * If approved by the trial court, the MDA is incorporated into the decree of divorce * * * . Once incorporated, issues in the MDA that are governed by statutes, such as * * * alimony, lose their contractual nature and become a judgment of the court. * * * The trial court retains the power and discretion to modify terms contained in the MDA relating to these statutory issues upon sufficient changes in the parties' factual circumstances. * * *

Eberbach, 2017 WL 2255582, at *3. "However, it is still construed in the same manner as a contract." In re Estate of Steil, No. M2011-00701-COA-R3-CV, 2012 WL 1794979, at *2 (Tenn. Ct. App. May 16, 2012). And while the domestic relations law of Tennessee provides for the award of alimony, see Tenn. Code Ann. sec. 36-5-121, subsection (m) of that section provides that nothing in the section "shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties as to support and maintenance of a party." The Court of Appeals of Tennessee has held: "The alimony statutes are not applicable where the parties agree in a marital dissolution

agreement to terms different from those set out in the statutes." Vick v. Hicks, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *4 (Tenn. Ct. App. Nov. 17, 2014).

We assume that the MDA was approved by the chancery court and was incorporated into petitioner and his ex-wife's divorce decree.  There is no evidence that the MDA has in any way been modified by the chancery court.  Nevertheless, petitioner argues that, as shown by "the nature and intent of the MDA", the bonus provision obligates him to pay what, had the chancery court made the an award on the same terms, would have been transitional alimony.

"Transitional alimony" is a class of alimony that a Tennessee court may award.  See Tenn. Code Ann. sec. 36-5-121(d)(1) through (g)(1).  It terminates on the death of he recipient.  Id. sec. 36-5-121(g)(3).  It is described as a sum of money payable by a spouse for a determinate period and awarded "when the court finds that rehabilitation is not necessary, but the economically disadvantaged spouse needs assistance to adjust to the economic consequences of a divorce".  Id. sec. 36-5-121(g)(1).

Petitioner has failed to persuade us that the bonus payment pursuant to the bonus provision was made to assist his ex-wife to adjust to the economic consequences of divorce or that such payments were to terminate on her death

before August 31, 2015. We start with the fact that the MDA does, in the alimony provision, specify monthly payments of $3,300 through August 31, 2015, described as "transitional alimony". Petitioner and his ex-wife (or, at least, her attorney) thus apparently knew how to describe a stream of payments for a determinable period as being unnecessary for her rehabilitation but necessary to assist her--she being economically disadvantaged--to adjust to the economic consequences of divorce.[4]

Moreover, petitioner has not provided any evidence of his ex-wife's expected expenses to allow us to find that the stated transitional alimony (under the alimony provision) was not sufficient for her to adjust to the economic consequences of her divorce from petitioner. Additionally, other provisions in the MDA limit any economic disadvantage to her resulting from her divorce from petitioner. She received more than 50% of the division of the liquid assets-- section 401(k) plan benefits, brokerage accounts, stock/profits interest units, and bank accounts. Petitioner also paid child support and was obligated to pay certain unsecured debts.

---

[4]Respondent has accepted petitioner's payment in 2012 of $39,600 ($39,600 = $3,300 × 12) to his ex-wife as a payment of alimony deductible under sec. 215(a).

Petitioner and his ex-wife were in the best position to specify how they wanted the payment at issue to be classified for Federal income tax purposes. As the Supreme Court of Tennessee noted in Self v. Self, 861 S.W.2d 360, 364 (Tenn. 1993):

> In addition to the rights and obligations of the parties with respect to each other, the liability for taxes, the rights of creditors, and other significant consequences may depend upon the preciseness of the language employed in the decree. Construction by the courts of uncertain and ambiguous language is a poor substitute for careful articulation.

Moreover, the bonus provision is without condition as to the ex-wife's entitlement to payments through August 31, 2015. Petitioner has not convinced us that, even were we to find that payments made pursuant to the bonus provision were made to assist his ex-wife to adjust to the economic consequences of divorce, a Tennessee court would, on his ex-wife's death before August 31, 2015, allow petitioner to cease making payments to her estate. See Vick, 2014 WL 6333965, at *4 (parties may agree in a marital dissolution agreement that a transitional alimony obligation shall not be modifiable and courts should hold the parties to their agreement).

Petitioner has failed to persuade us that his obligation to make payments under the bonus provision would have ceased if his ex-wife had died before

August 31, 2015, the scheduled end of his obligation to make those payments. Therefore, the bonus provision fails to satisfy the requirement of section 71(b)(1)(D) that there be no liability to make such payments for any period after her death. And because it fails to satisfy that requirement, the bonus payment did not qualify as the payment of alimony within the meaning of section 71. Therefore, we sustain respondent's adjustment disallowing petitioner's deduction of $11,547 as alimony. We sustain in full respondent's determination of a deficiency in tax for 2012.

Decision will be entered

for respondent.