# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
Assigned on Briefs January 4, 2016

## MARLENE J. BIDELMAN-DYE v. JAMES D. DYE

**Appeal from the Circuit Court for Hamilton County**
No. 12-D-201          Hon. Jacqueline S. Bolton, Judge

**No. E2014-01891-COA-R3-CV – Filed March 29, 2016**

In this post-divorce matter, numerous issues arose after the former wife, the primary residential parent, sought to relocate with the minor child. The trial court allowed the wife to relocate with the child to Pennsylvania and adopted her proposed parenting plan with certain modifications. On the issues raised in this appeal, the trial court ruled in the husband's favor. The wife appeals. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Case Remanded

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and Thomas R. Frierson, II, J., joined.

Marlene J. Bidelman, Sewickley, Pennsylvania, pro se.

Misty Lay Harris, Chattanooga, Tennessee, for the appellee, James D. Dye.

## OPINION

### I. BACKGROUND

James D. Dye ("Husband") and Marlene J. Bidelman-Dye ("Wife") met in Pittsburgh, Pennsylvania, while Husband was there on business. At the time, Wife practiced law in Pittsburgh. They married on December 31, 2004, the second marriage for both parties. Wife relocated to Tennessee because Husband had children from his

prior marriage residing in the Chattanooga area. Husband also was employed at that time by a family business in Cleveland, Tennessee. Upon moving to Chattanooga in December 2004, Wife was employed as an attorney by the law firm of Baker, Donelson, Bearman, Caldwell & Berkowitz, PC ("Law Firm"). Initially, she earned $100,000 per year with Law Firm. On January 9, 2006, the parties' minor child, Maya, was born. In June 2006, Husband began working at Chattanooga Office Supply ("COS").

According to Wife, prior to the marriage, she sold a townhome in Virginia and realized a gain of $58,000. The money was invested in a Roth IRA, an IRA, and a money mutual fund. In May 2005, Wife purchased the marital residence at 766 Breezewood Way in Chattanooga, using money from the sale of the townhome.

The parties separated in September 2011, upon Wife learning of the extramarital affairs of Husband.[1] Wife left the marital home with the minor child. On January 18, 2012, Wife, pro se, filed the initial complaint for divorce. She did not pray for attorney's fees or alimony. On February 16, 2012, she filed an amended complaint to allege adultery and remove irreconcilable differences. At this time, she also filed a proposed temporary parenting plan and requested child support pendente lite. When she filed the complaint for divorce, Wife earned over $123,000 per year with Law Firm. Husband's base salary with COS was $96,000 with yearly bonuses. In 2010, his gross bonus was $50,000. In 2011, his gross bonus was $40,000. In 2012, the gross bonus was $50,000. Prior to October 2012, Husband's income also included $350 per month specifically for use of an automobile. In October 2012, however, COS purchased a vehicle titled in the company name for Husband's use. According to Husband, he is responsible for his own gas and takes care of the maintenance on the vehicle. Beginning on January 1, 2012, after Wife removed Husband, the child, and Husband's other two children from her policy through Law Firm, Husband began carrying the child on his health insurance.

The parties made an attempt to reconcile, with Wife dismissing her complaint on March 13, 2012. The final order of voluntary dismissal was entered by the trial court on the following day. On April 9, 2012, however, Wife moved to set aside the order of dismissal and reinstate the divorce action. She also moved for adoption of her temporary parenting plan and payment of child support pendente lite. On April 13, 2012, the parties entered into an agreed order reinstating the divorce. During this month, Husband began paying child support in varying amounts. These payments continued in this manner until October 2012, at which time the parties stipulated to $1,000 per month.

According to Husband, Wife depleted the parties' joint bank account. She rented an apartment the parties could not afford. Husband claims he kept his 2011 bonus in cash in the marital residence out of fear Wife would take the bonus if the money was deposited

---

[1] Wife asserts she left the home on September 21, 2011. Husband stipulated to the relationships.

into their joint bank account. In February 2012, while the parties were in Mississippi visiting Husband's dying mother, Wife admitted to taking $6,000 of Husband's bonus, but alleged she returned $5,900 the following day. At some point, $14,275 disappeared from the home. The trial court determined the missing cash should be treated as an asset received by Wife.

In March 2012, Law Firm reduced Wife's pay by $14,000. Four months later, Wife was informed she would be losing her job with Law Firm as of September 30, 2012. She was provided a severance package of her salary of over $10,000 per month through January 31, 2013.

In June 2012, Wife, now represented by counsel, filed a motion for child support and attorney's fees. Later that month, Husband filed a motion for possession of the 2011 tax refund and other funds. On August 2, 2012, Husband filed a motion to designate him as the primary residential parent, based upon Wife's desire to relocate to Atlanta, Georgia, with the child. According to Wife, she needed to live with her parents to lower expenses because of her job loss. Husband objected to the relocation, citing, inter alia, previous disclosures to him by Wife that her parents were alcoholics who had been abusive to her. At the hearing on the relocation request, Wife did not disclose to the court she was receiving the substantial severance package.

Wife began practicing law as a sole practitioner on November 15, 2012. As of February 1, 2013, she also was receiving unemployment benefits from the state in the amount of $290 per week. At some point during the month, the GMC Yukon vehicle driven by Wife was repossessed because Wife failed to make the monthly payments.[2] Liability for the vehicle was a joint debt of the parties. On February 25, 2013, however, three days after the Yukon was repossessed, Wife purchased a 2005 Mercedes-BE M Class vehicle for $19,016.79 at an interest rate of 17.680 percent without obtaining the permission of the court pursuant to the statutory injunction. Instead of making payments on the repossessed GMC Yukon, Wife instead made a deposit of $4,000 on the new vehicle. The application completed by Wife to purchase the vehicle reflected her claimed total monthly income was $4,037 per month.

Meanwhile, beginning February 1, 2013, Husband began paying Wife's health insurance in the amount of approximately $450.63 per month. Additionally, he paid the Home Equity Line of Credit owed to Capital Mark Bank in the amount of $258 per month. Husband's base monthly gross income was $8,000 and his net income per month, after taxes, insurance and payment of his child support obligations, was $2,900.36. According to Husband, his net income per month was in the negative by $2,678.90, after payment of his monthly obligations and living expenses.

---

[2] Wife also received an eviction notice during the proceedings.

Husband contends that during the divorce litigation, Wife continued to spend money in excess of the parties' means. He cites as an example Wife's insistence on sending the child to an expensive private school, St. Nicholas School, for pre-kindergarten and kindergarten. The school debt at the time of the final hearing of divorce totaled approximately $13,182 in unpaid tuition, extracurricular, camp, and lunch expenses. The record reveals Wife received $11,721.44, from the parties' joint income tax refund from 2011. Upon selling a Toyota vehicle, the trial court entered an order which required Wife to pay the proceeds of the vehicle sale to the St. Nicholas school debt. Wife kept $500 of the sale proceeds received in direct contravention of the trial court's order. Wife also received a total of $10,422 from Husband's 2012 year-end bonus. During this time, the trial court found Wife took $14,275 in cash from Husband's bonus which was located in the marital residence. Further, Wife withdrew funds from her 40l(k) totaling $20,000 without obtaining permission of the trial court. She admitted to taking a vacation to Mexico in March 2012 and a trip to Disney World around the end of December 2012 or January 2013, spending marital funds. Wife acknowledges she took these trips while she sought an award of alimony from the court.

The case was heard on April 17, and 30, 2013, with closing arguments on May 13, 2013. The parties were finally divorced pursuant to a memorandum opinion and order ("M&O") entered on June 4, 2013. In a final order of divorce entered on September 12, 2013, Wife was designated the primary residential parent and awarded transitional alimony in the amount of $1,000 per month for eighteen months. A parenting plan was adopted and child support was set. Husband filed a motion to alter or amend.

The day after the final order of divorce was entered, Wife gave statutory written notice to Husband of her intent to relocate with the child to Pittsburgh, Pennsylvania, to take a full-time position with a firm ("B&F") there. Husband thereafter filed a petition in opposition to removal of the child. In view of Wife's intention to relocate, Husband asked the trial court to consider the Wife's new employment, as this development contradicted her testimony at trial. He also requested, among other things, a change in the designation of the primary residential parent, adjustment of child support, and removal of any requirement for payment of alimony.

After a hearing regarding the relocation issue, on January 7, 2014, the court designated Husband as the temporary primary residential parent until the end of the child's school year, terminated Wife's transitional alimony, and continued Husband's child support obligation to Wife pending the final hearing. In the M&O, the trial court noted as follows:

> The Court finds [Wife]'s lack of candor to be suspect as to her true motivation for moving to Pennsylvania where the child has no relatives. The testimony during the hearing

indicated [Wife] had quite a few clients in Chattanooga, was continuing to take new clients, has an office here and is continuing to try cases, traveling back and forth to Chattanooga.

The court found Husband would be the temporary primary residential parent "until such time as [Wife] adjusts to her new life in Pennsylvania and establishes her practice, if in fact, she does have a job there."

Husband's child support and transitional alimony obligations were being paid by wage assignment. Wife, however, refused to agree to modify the assignment. As a result, in January 2014, Wife received an overpayment of alimony. The trial court entered an amended order on January 13, 2014, but Wife did not return the overpayment. On May 13, 2014, the court entered a M&O permitting the relocation of the child. The court observed Wife "has finally established that she has a reasonable purpose to remove the parties' minor child . . . to her new job in Pennsylvania." Wife's proposed permanent parenting plan was adopted with certain modifications. The court further found each party was responsible for his or her own attorney's fees and taxed costs equally.

On July 21, 2014, the trial court determined Husband had overpaid Wife

$3,870 for months December through May and $902 for months June and July. Further, [Wife] shall repay [Husband] $1,000 for the January alimony overpaid. Total Judgment of $5,772 plus interest for which execution may issue.

## II. ISSUES

In this timely appeal, Wife presents the following issues:

a) Whether the trial court erred when it ordered the federal tax exemption be shared by the parties on an alternating basis?

b) Whether the trial court erred in calculating Husband's income?

c) Whether the trial court erred when it awarded retroactive child support beginning as of April 1, 2012, rather than the date of separation?

d) Whether the trial court erred when it failed to find Husband had dissipated marital assets?

e)    Whether the trial court erred in terminating the transitional alimony it awarded to Wife?

f)    Whether the trial court erred when it failed to award Wife her attorneys' fees?

g)    Whether the trial court erred when it awarded a judgment to Husband for the overpayment of child support and alimony during the pendency of the relocation issue?

h)    Whether the trial court erred when it deleted the requirement the parties provide proof of income on an annual basis from the adopted parenting plan?

## III.  STANDARD OF REVIEW

We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  Because trial courts are in a far better position than this court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court.  *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991).  Consequently, where issues of credibility and weight of testimony are involved, this court will accord considerable deference to the trial court's factual findings.  *In re M.L.P.,* 228 S.W3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)).  We review questions of law de novo with no presumption of correctness.  *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

Determinations regarding spousal and child support are reviewed under an abuse of discretion standard.  *See Hanover v. Hanover*, 775 S.W.2d 612, 617 (Tenn. Ct. App. 1987).  "This standard requires us to consider (1) whether the decision has a sufficient evidentiary foundation, (2) whether the court correctly identified and properly applied the appropriate legal principles, and (3) whether the decision is within the range of acceptable alternatives."  *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).  Our Supreme Court in *Gonsewski v. Gonsewski*, 350 S.W.3d 99 (Tenn. 2011) observed that "when reviewing a discretionary decision by the trial court, such as an alimony determination, the appellate court should presume that the decision is correct and should review the evidence in the light most favorable to the decision."  *Id.* at 105 (citations omitted).

# IV. DISCUSSION

## A.

Wife asserts the trial court erred in ordering the federal tax exemption be alternated between the parties by year. Wife contends, based upon Tenn. Comp. R. & Regs. 1240-02-04-.03(6)(b), it is mandatory for her to receive the federal tax exemption. She claims the trial court is required to provide a specific explanation as to the basis for not awarding the exemption to the primary residential parent.

The allocation of exemptions for minor children is discretionary and should rest on the facts of the particular case. *Chandler v. Chandler*, No. W2006-493-COA-R3-CV, 2007 WL 1840818, at \*9 (Tenn. Ct. App. June 28, 2007). It is not mandated Wife be awarded the exemption. Our courts have not held this "rule" is obligatory on the trial courts. *Blankenship v. Cox*, No. M2013-00807-COA-R3-CV, 2014 WL 1572706, at \*15 (Tenn. Ct. App. Apr. 17, 2014). The regulations "'simply describe[] the methodology used to compute spouses' respective net incomes,' and it is merely a mathematical assumption with no bearing on the trial court's discretion to award the tax exemptions." *Id.* Thus, the court was not required to allocate the tax exemption solely to Wife after hearing the entirety of the evidence, including testimony as to income, upon which it determined child support. *See Crews v. Staggs*, No. M2010-01624-COA-R3-CV, 2011 WL 2848745 (Tenn. Ct. App. May 31, 2011). The trial court did not abuse its discretion in alternating the allocation of the federal tax exemption.

## B.

Wife alleges the trial court erred in its determination of Husband's income. She specifically points to Husband's use of a company car and receipt of advances against bonuses.

When determining Husband's income, the trial court held his base salary is $96,000. The court, however, set child support based upon Husband's "average income of $146,000.00 annually." Included in this average income were Husband's bonuses and work benefits. Over the three years considered by the court, Husband's average bonus was $46,333.

Wife argues any advances taken against a bonus should be considered income over and above the bonus itself. She acknowledges the amount of the bonus received by Husband in 2010 was $50,000. She further acknowledges that in 2011, Husband received a bonus in the amount of $40,000, and in 2012 a bonus of $50,000. These bonuses were included in the trial court's income determination. Wife argues an additional $19,580

should be included in Husband's income as this amount of the bonuses was received through advances.

We do not agree with Wife. As asserted by Husband, by their very nature, advances result in a reduction of the amount later received. No loans, including these advances, constitute income. Wife's argument is without merit.

Wife further asserts the trial court erred in determining Husband's income when it failed to include the use of a company car, a 2012 Lincoln MKZ. Wife contends fringe benefits may include a company car. *See* Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(4). According to Wife, the evidence submitted by Husband does not show the value of the company-provided vehicle on his W-2s. She notes that under the IRS Fringe Benefit Guide (Publication 5137), if an employer-provided vehicle is used for both business and personal purposes, personal use of such vehicle is taxable to the employee as wages. Reg. § 1.61-21(c)(2). Accordingly, she argues that because Husband's car is a "fringe benefit" that reduces his personal living expenses, it must be counted as income, *see Allen v. Allen*, No. M2013-00271-COA-R3-CV, 2014 WL 1713231 (Tenn. Ct. App. Apr. 28, 2014), under the Tennessee Child Support Guidelines.

Pursuant to the Guidelines, "variable income such as commissions, bonuses, overtime pay, dividends, etc. shall be averaged over a reasonable period of time consistent with the circumstances of the case and added to a parent's fixed salary or wages to determine gross income. . . ." Tenn. Comp. R. & Regs. 1240-2-4-.04 (3)(b). Prior to October 2012, COS included in Husband's income the amount of $350 per month specifically for use of an automobile. As reflected on Husband's pay stubs, this amount, set by Husband's employer, was included in his taxable income. In the trial court's M&O, Husband's base salary was found to be $96,000 per year. Nevertheless, his income for child support purposes was set at $146,000, which was $50,000 over his base salary, although Husband's bonuses averaged $46,333. Accordingly, Husband's income for child support purposes was set at approximately $3,700 per year over and above his average income taking into account any such benefits. The trial court properly considered the benefits Husband received from the use of the car.

Wife claims, however, based upon her calculations, the monthly value of the leased vehicle is $947 per month instead of the lesser amount determined by Husband's employer. She relies on an "auto lease calculator exhibit" she prepared for trial, admitted for identification only. There is no substantive proof before the court supporting Wife's contentions. She has provided no evidence to show the amount found by the trial court is unreasonable.

As part of Husband's employment, he receives 100 percent reimbursement on all business related expenses, such as travel, meals with potential clients or employees, and

- 8 -

other similar business related expenses. Although Wife claims these reimbursements of expenses should be included as income to Husband, she has provided no evidence suggesting the amount of the reimbursement is unsupported or unreasonable. Accordingly, we find the trial court did not err in determining Husband's income.

## C.

Wife contends it is undisputed the parties separated on September 21, 2011. She claims during this time, Husband did not pay any child support, any tuition to St. Nicholas School, or any child-related expenses. According to Wife, when the court awarded retroactive child support beginning as of April 1, 2012, rather than as of September 21, 2011, more than six months of unpaid child support was left unaddressed. Wife further asserts the trial court offered no basis for its determination that the retroactive child support amounted to $1,000 per month.

The Tennessee Child Support Guidelines establish a presumption child support will be paid from the date of separation of the parties in a divorce. The presumption may, however, be rebutted by the provisions of Tennessee Code Annotated section 36-2-311(a)(11) or section 36-5-101(e). *See also* Tenn. Comp. R. & Regs. 1240-2-4-.06.

Although they separated in September 2011, Husband and Wife continued to maintain joint expenses and reconciled for a period of time, with Wife dismissing her complaint for divorce. During the relevant period, Husband continued to support the child and Wife by carrying his daughter on his health insurance. Additionally, although Wife earned over $10,000 per month during most of this time, she depleted the parties' joint checking account, took a portion of Husband's 2011 bonus, and all of the parties' 2011 tax refund. Between the initial separation and April 1, 2012, Wife had access to over $29,000 not included in her gross income for child support purposes. The evidence supports the holding of the trial court.

## D.

"Dissipation involves intentional or purposeful conduct that has the effect of reducing the funds available for equitable distribution." *Altman v. Altman*, 181 S.W.3d 676, 681-682 (Tenn. Ct. App. 2005). The factors most frequently considered by the court "when determining whether a particular expenditure or transaction amounts to dissipation include: (1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or were contemplating divorce; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating

party intended to hide, deplete, or divert a marital asset." *Id.*, 181 S.W.3d at 682 (internal citations omitted).

Wife contends the evidence shows Husband made expenditures related to two women and paid his attorney's fees from marital assets. She based her claims on the testimony of one of the women and Husband's bank records. Wife asserts Husband dissipated marital assets by $8,593.52 from October 2011 through September 2012 by spending on Stacy Dempsey, who testified Husband bought her dinners, clothes, shoes, and gave her some money to assist with a sick pet. Wife asserts Husband dissipated marital assets in the amount of $7,131 on Colleen Zamorski. Wife's exhibit, however, a spreadsheet, was merely marked for identification and was not admitted in the proceedings below. No supporting documentation containing values was admitted into evidence. As the exhibit was not admitted as proof, Wife has inadequate evidence of dissipation.

Wife also asserts Husband dissipated marital assets by leaving "his 2011 bonus in cash." She does not assert Husband took the missing money, but merely asserts he carelessly handled the funds. The trial court, in its M&O entered on June 4, 2013, found Husband's testimony regarding the funds to be more credible than that of Wife's testimony. The trial court found Wife received the value of this asset, the cash taken, in the final division of assets and liabilities.

Finally, Wife contends Husband dissipated marital assets in paying his attorney's fees from marital funds. Husband acknowledges he paid some of his attorney's fees through loans against his yearly bonuses. Wife, however, also used marital assets in order to satisfy her attorney's fees, including $5,000 she received pursuant to the March 18, 2013 order.

It has been held "[t]he party alleging dissipation carries the initial burden of production and the burden of persuasion at trial." *Beyer v. Beyer*, 428 S.W.3d 59 (Tenn. Ct. App 2013) (citing *Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007), *perm. app. denied*, (Tenn. Feb. 25, 2008)). Wife has not established the value of any dissipation for the purposes of Tennessee Code Annotated section 36-4-121(c)(5). The record reveals that if any dissipation did occur, both parties participated to some extent. We find no error in the court's ruling regarding this issue.

### E.

Wife asserts the trial court erred by eliminating an obligation of Husband to Wife of transitional alimony in the amount of $1,000 per month. She argues the award of

transitional alimony is non-modifiable; therefore, the court could not terminate the alimony obligation.

It is well-settled in Tennessee that trial courts have broad discretion when determining whether alimony is needed and, if so, the amount, duration, and nature of the award. *Mayfield v. Mayfield*, 395 S.W.3d 108, 115 (Tenn. 2012). Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Gonsewski*, 350 S.W.3d at 109 (internal quotation marks omitted). "Transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id.,* 350 S.W.3d at 107. Transitional alimony is payable for a definite period of time and may be modified only if: (1) the parties agree that it may be modified; (2) the court provides for modification in the divorce decree, decree of legal separation, or order of protection; or (3) the recipient spouse resides with a third person following the divorce. Tenn. Code Ann. § 36-5-121(g)(2).

The parties were divorced pursuant to a M&O entered on June 4, 2013. In this initial order, Wife was awarded transitional alimony. The order did not become final, as Husband timely filed a motion to alter or amend. On September 12, 2013, an order was entered which adopted a parenting plan and set child support pursuant to the M&O on June 4, 2013. On September 13, 2013, Wife gave notice to Husband of her intent to relocate with the child to Pittsburgh, Pennsylvania. Subsequently, within thirty days of the September 12, 2013 order, Wife filed a motion to alter or amend and Husband filed a motion to re-open proof or, in the alternative, motion to alter or amend based on the requested relocation and Wife's employment. Thus, under Rule 59 of the Tennessee Rules of Civil Procedure, the trial court had every right to modify its initial order.

As noted by Husband, Wife provided no transcript of the hearing of December 6, 2013, and failed to submit a statement of evidence for use by this court as required by Rule 24(b) of the Tennessee Rules of Appellate Procedure. As Wife failed to properly file a transcript or statement of evidence, the decision of the trial court as to the termination of transitional alimony must stand. Further, the record supports the assertions of Husband that the trial court found Wife "lacked candor" and was "less than forthcoming."

"The amount of alimony," if any, "to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances, for the appellate courts are disinclined to review such discretion except in cases where it has manifestly been abused." *Hanover*, 775 S.W.2d at 617 (citing *Ingram v. Ingram*, 721 S.W.2d 262

- 11 -

(Tenn. Ct. App. 1986)).  When determining the nature and amount of an alimony award, the trial court should consider all relevant factors, including:

1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

3) The duration of the marriage;

4) The age and mental condition of each party;

5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

7) The separate assets of each party, both real and personal, tangible and intangible;

8) The provisions made with regard to the marital property, as defined in § 36-4-121;

9) The standard of living of the parties established during the marriage;

10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i).

Wife sought to move to Pittsburgh, Pennsylvania based upon a job opportunity resulting in significantly increased income.  She has substantial earning capacity and the

- 12 -

ability to work. We find the trial court did not abuse its discretion in relieving Husband of the requirement to pay Wife transitional alimony.

## F.

Wife appears to be requesting attorney's fees from the divorce and from the relocation case. She argues she is entitled to her attorney's fees because "she earns little to no income in comparison to Husband." Further, she avers she ultimately prevailed in her relocation case.

An award of alimony in solido to pay attorney's fees is "appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses, or the spouse would be required to deplete his or her resources in order to pay them." *Gonsewski*, 350 S.W.3d at 113 (internal citations omitted). A trial court's decision regarding whether to award attorney's fees is reviewed by this court pursuant to an abuse of discretion standard. *See In re Estate of Greenmyre*, 219 S.W.3d 77, 85-86 (Tenn. Ct. App. 2005). A review of the record reveals Wife has not provided any proof of fees owed. Significantly, the trial court found both parties would pay his or her own attorney's fees in both the divorce action and the relocation action. We find the trial court did not abuse its discretion in finding Wife is not entitled to relief from paying her attorney's fees. We similarly decline Husband's request for attorney's fees on appeal.

## G.

Wife avers the trial court erred awarding a judgment against her in favor of Husband for amounts which the court determined Wife received, but was not entitled. Wife maintains she should be able to retain all of child support received because she disagrees with the court's determination. It is clear the child was residing in Chattanooga with Husband during the months in question. The judgment against Wife in the amount of $5,772 plus interest is affirmed.

## H.

When the trial court issued its M & O on May 13, 2014, it struck from the adopted parenting plan the requirement the parties provide proof of income on an annual basis. We find the trial court was well within its discretion to remove the proof of income requirement and committed no error.

# V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Marlene J. Bidelman, for which execution may issue, if necessary.

_____

JOHN W. McCLARTY, JUDGE