IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2024 Session

**TIFFANY LEE LEE v. JEREMY DAVID LEE**

**Appeal from the Chancery Court for Sumner County**
**No. 2020DM-14      Louis W. Oliver, Chancellor**

———————————————————

**No. M2023-00968-COA-R3-CV**

———————————————————

The trial court entered a final decree in a contentious divorce.  Based on the proof at trial, the court classified, valued, and divided the marital estate.  It also awarded the wife alimony in solido to equalize the division, alimony *in futuro*, and attorney's fees.  Both parties raise issues on appeal.  Upon review, we conclude the court erred in omitting two marital assets from the division and in calculating a marital debt, which skewed the division in the husband's favor.  Because the court expressly intended to make an equal division, we modify the court's equalization award.  Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and KENNY W. ARMSTRONG, J., joined.

Robert Todd Jackson, Brentwood, Tennessee, for the appellant, Tiffany Lee Lee.

Donald Capparella, Nashville, Tennessee, for the appellee, Jeremy David Lee.

**OPINION**

**I.**

**A.**

In 2020, Tiffany Lee ("Wife") filed for a divorce from Jeremy Lee ("Husband"), her husband of approximately 20 years.  Husband responded with a counterclaim for divorce.  Contested issues in this protracted divorce included the grounds for divorce,

valuation and division of the marital estate, dissipation, and alimony. Husband and Wife eventually agreed on the basic terms of a permanent parenting plan for their three minor children but left the calculation of child support to the court.

During the marriage, the parties amassed a sizeable marital estate, including several closely held businesses. Together, they owned two businesses related to Wife's music career, Plumb Enterprises, Inc. and Shoe Publishing, Inc. During the marriage, Husband acquired an ownership interest in two of his father's businesses, Global Product Services, Inc. and AG Lighting Innovations, LLC. Shortly before trial, Husband belatedly revealed that he also had an ownership interest in two additional family businesses, L4 Properties, LLC and Uber Displays Holdings, LLC.

With the court's approval, the parties retained a joint expert, Kurt Myers, to value their business interests. Unhappy with Mr. Myers's value conclusions, Husband engaged a second expert, Vic Alexander, to prepare rebuttal reports. Among other things, Mr. Alexander disagreed with Mr. Myers's conclusion as to the value of Husband's minority interest in Uber Displays Holdings.

Uber Displays Holdings was formed in September of 2020 to sell or lease LED products acquired from Global Product Services. Husband was a managing member. Mr. Myers noted that there was little available data for the fledgling company. It generated no revenue in 2020 and operated at a loss in 2021.

Mr. Myers considered three main approaches to value—asset, income, and market—and decided that the market approach was the best fit. In his opinion, the income approach was not a viable option for assessing the value of a relatively new company without a stable earnings history or even any projections of future income. He also found the asset approach to be of limited usefulness on these facts although it did provide "a value the business cannot go below." His calculations yielded an adjusted book value of $2,130,000.

Using the market approach, Mr. Myers valued Uber Displays Holdings at $17,500,000 as of August 31, 2021. According to Mr. Myers, "actual transactions in the company's equity" are "one of the best indicators of value that we have." To obtain operating capital, Uber Displays Holdings had borrowed a total of $2,150,000 from multiple investors as reflected in 17 convertible promissory notes. The notes provided that, at maturity, they converted to equity interests based on a capitalization price of $17,500,000. In Mr. Myers's view, these individuals decided to invest in Uber Displays Holdings knowing that if they were not repaid, they would receive a share of a company worth at least $17,500,000. He acknowledged that the company's books still reflected the notes as outstanding debt, not equity, even though the notes had matured. But he dismissed that as insignificant. He surmised that as a small, unsophisticated company, "they just

2

haven't adjusted them on their books yet." After applying relevant discounts, he determined the value of Husband's fully diluted member interest was $5,900,000.

Mr. Alexander criticized Mr. Myers's reliance on the market approach as inappropriate on these facts. He did not believe that the convertible notes represented true market transactions in which cash was exchanged for equity. Thus, the capitalization price was not a reliable basis for assigning value to the company. In his opinion, the only appropriate option was adjusted book value. He arrived at an adjusted book value of $357,865 as of March 31, 2021.

For his part, Husband insisted that Uber Displays Holdings had a negative value. He claimed the company had not performed as expected and was unable to pay its outstanding debts.

B.

Six months later, the court issued its ruling. It granted Wife an absolute divorce on grounds of inappropriate marital conduct and adultery. Then it classified, valued, and divided the marital estate. The court found both financial experts "credible, qualified, and helpful." It adopted most of Mr. Myers's valuations except for his conclusions as to the values of Global Product Sources and Uber Displays Holdings. In both instances, the court chose a lower value.

After considering the relevant statutory factors, the court found that an essentially equal division was warranted. This was a long-term marriage. Both parties had contributed financially to the marriage—first, through Wife's music career and then, Husband's business endeavors. Given the decline in Wife's music career, the court found Husband had a far higher earning capacity than Wife. Husband was at fault in the demise of the marriage. He dissipated marital funds on extramarital relationships and dating apps. The court also factored in Husband's lack of credibility throughout the divorce proceedings. Husband lied about his affairs, hid money from Wife, and failed to disclose assets in a timely fashion.

The court initially awarded Husband 56.82% of the marital estate and Wife, 44.18%. To equalize the division, the court ordered Husband to pay Wife $321,533 in alimony in solido.

The court calculated Husband's total gross income based on a weighted average of the prior three years. After taxes, the court found his net income per month to be $21,740.00. In the court's view, Wife had limited earning capacity. It imputed her net monthly income as $4,741. It ordered Husband to pay monthly child support as dictated by the child support guidelines.

3

The court also awarded Wife alimony *in futuro*. It found Wife was an economically disadvantaged spouse without any reasonable prospect for rehabilitation. Her once successful music career was largely over. She had recently sold her music catalogue. She never attended college and had few marketable skills beyond the music industry. The court found Wife needed $3,000 per month until the oldest child's graduation from high school. Then she would need additional funds to compensate for the reduction in child support. By contrast, Husband was a highly successful businessman. Based on his substantial income, the court found he had the ability to pay.

The court also found Wife was entitled to an award of attorney's fees as alimony in solido. But it left the amount of the award to be determined later.

C.

Both parties promptly asked the court to revise its ruling. Wife pointed to errors in the calculation of child support and a health insurance discrepancy. Husband echoed Wife's concerns and raised additional issues, including the court's calculation of the equalization award and the determination of his ability to pay alimony.

At the same time, Wife asked the court to finalize the award of attorney's fees. She also sought an award of discretionary costs and an order directing Husband to pay the outstanding fees of the joint expert.

After a hearing, the court agreed to make some corrections to its previous ruling and took other requests under advisement. It directed Wife to adjust her calculation of attorney's fees and discretionary costs. It reserved judgment on the apportionment of the joint expert's fees.

Before the court could issue a revised ruling, Wife requested more changes. She asked the court to reopen the proof so she could present evidence on an additional marital debt. She also wanted the court to "revise its finding as to the equity in the marital residence" and to correct the amount of debt owed on the vehicle she received in the division. Husband objected to these requests and moved to reopen the proof on other contested issues should the court permit Wife to present new evidence.

The court issued a final order on June 2, 2023, resolving all outstanding issues. It clarified responsibility for the children's health insurance, revised its calculation of child support, and adjusted the award of alimony *in futuro* accordingly. Because it had miscalculated the amount of alimony in solido needed to equalize the division, the court reduced the equalization award from $321,533 to $160,766. But it declined to reopen the proof or revise any other previous findings. The court also determined the amount of Wife's reasonable attorney's fees based on her revised calculations and awarded her

4

discretionary costs.  Finally, it apportioned responsibility for payment of the joint expert's outstanding fees between the parties.[1]

## II.

Both parties raise issues on appeal.  Husband argues that we should deem many of Wife's stated issues waived because her principal brief does not fully comply with Rule 27 of the Tennessee Rules of Appellate Procedure or Rule 6 of the rules of this Court.  *See* TENN. R. APP. P. 27(a); TENN. CT. APP. R. 6.  He complains that she failed to include an applicable standard of review for each of her stated issues.  And, more importantly, she failed to support many of her arguments with appropriate citations to the record and to legal authority.  *See* TENN. R. APP. P. 27(a)(7); TENN. CT. APP. R. 6.  We may deem an issue waived when a litigant fails to support that issue with "an argument satisfying the requirements of Tenn. R. App. P. 27(a)(7)."  *Hodge v. Craig*, 382 S.W.3d 325, 335 (Tenn. 2012); *see also Tenn. State Bank v. Mashek*, 616 S.W.3d 777, 813 (Tenn. Ct. App. 2020).

We choose to overlook the deficiencies in Wife's brief.  *See* TENN. R. APP. P. 2. The overall intent of our rules is "to determine every appellate proceeding on its merits." *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024).  We have discretion "to excuse technical deficiencies that do not significantly impede the appellate process."  *DiNovo v. Binkley*, 706 S.W.3d 334, 336 (Tenn. 2025).  Here, Wife's principal brief is not totally lacking in factual or legal citations.  *See id.* at 336-37 (concluding that appellate court "unreasonably declined to consider [the] appeal based on [the appellant's] failure to repeat record citations in the argument section of his brief").  We can grasp the gist of her arguments, and Husband was able to brief the merits of this appeal.

### A.

Husband contends that the evidence preponderates against the court's valuation of his minority interest in Uber Displays Holdings.  The value of marital property is a question of fact.  *Wallace v. Wallace*, 733 S.W.2d 102, 107 (Tenn. Ct. App. 1987).  Thus, the trial court's decision "will be given great weight on appeal."  *Id.*  We presume the trial court's valuation is correct unless the evidence preponderates otherwise.  TENN. R. APP. P. 13(d).

Courts determine the value of a marital asset "by considering all relevant evidence," and each party bears the burden of production.  *Wallace*, 733 S.W.2d at 107.  In valuing

---

[1] Wife argues that the court erred in making her responsible for payment of a portion of the joint expert's fees.  We discern no error in the court's decision.  The parties agreed that the joint expert's fees would be "paid out of marital funds, the final allocation of which [was] reserved pending the final resolution of [the] case."  Having heard Mr. Myers's testimony and reviewed his reports and invoices, the court found that he overvalued Husband's two largest business interests, Global Product Services and Uber Displays Holdings, to favor Wife.  So it allocated payment of the fees associated with those valuations to her.  It ordered Husband to pay the rest.

closely held businesses, like the one at issue here, relevant evidence "includ[es] valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable." Tenn. Code Ann. § 36-4-121(c)(10) (2021). There are numerous acceptable valuation methods. *Wallace*, 733 S.W.2d at 107.

The court rejected Mr. Myers's use of the market approach to value Uber Displays Holdings. Like Mr. Alexander, the court did not consider the convertible note transactions to be "a reliable method to establish the company value." But Mr. Myers also established an adjusted book value for the company, which the court found was "the best information available" because Husband's credibility was "negligible at best." After applying Husband's ownership percentage and relevant discounts to that figure, the court valued Husband's interest in Uber Displays Holdings at $531,830.

Husband insists that the court failed to consider all the relevant evidence of value. Relying on his own interpretation of the convertible notes, Husband contends that the adjusted book value of the company was zero. As he sees it, Mr. Myers admitted as much on cross-examination. But "valuation evidence is inherently subjective." *Owens v. Owens*, 241 S.W.3d 478, 489 (Tenn. Ct. App. 2007). And determining the value of a closely held business "is not an exact science." *Wallace*, 733 S.W.2d at 107. The two experts disagreed as to the effect of the convertible notes on the company's value. Faced with conflicting evidence of value, the trial court was free to select a value within the range of the values presented by the competent evidence. *See Kinard v. Kinard*, 986 S.W.2d 220, 231 (Tenn. Ct. App. 1998); *Wallace*, 733 S.W.2d at 107. We discern no basis to question that decision here.

B.

Wife identifies four errors in the court's division of the marital estate. She contends the court omitted two marital assets from the division and erred in calculating the debt on her vehicle, the net equity in the marital residence, and the amount of Husband's dissipation. In her view, these errors rendered the court's division inequitable. As relief, she seeks an adjustment to the court's award of alimony in solido.

Trial courts enjoy broad discretion in shaping an equitable division. Tenn. Code Ann. § 36-4-121(a)(1); *see Flannary v. Flannary*, 121 S.W.3d 647, 650 (Tenn. 2003). We will defer to the trial court's division "unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Larsen-Ball v. Ball*, 301 S.W.3d 228, 234 (Tenn. 2010) (quoting *Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007)).

## 1. Omitted Accounts

Wife complains that the court omitted Husband's 401(k) and a small investment account from the division.[2]  These accounts were marital property.  Tenn. Code Ann. § 36-4-121(b)(1)(A).  It was the court's responsibility to "[e]quitably divide, distribute or assign the marital property between the parties."  *Id.* § 36-4-121(a)(1); *see Fuller v. Fuller*, No. 02A01-9708-CH-00175, 1998 WL 237709, at *3 (Tenn. Ct. App. May 13, 1998) (noting trial courts "must include all of the parties' marital property in the marital estate").  There was proof at trial as to the nature and value of both accounts.[3]  Given this proof, we conclude that the court should have included them in its division of the marital estate.  *See Pope v. Pope*, No. M2010-00067-COA-R3-CV, 2010 WL 4272690, at *6 (Tenn. Ct. App. Oct. 28, 2010) (concluding that the court erred in failing to classify and assign values to all marital property); *Adams v. Adams*, No. W2007-00915-COA-R3-CV, 2008 WL 2579234, at *5 (Tenn. Ct. App. June 30, 2008) (concluding that trial court erred in failing to dispose of all of the parties' assets and debts).

## 2. Lincoln Navigator Debt

Wife faults the court for adopting an outdated balance as the debt on her Lincoln Navigator.  "[M]arital debts are subject to equitable division in the same manner as marital property."  *Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003).  The court awarded the Lincoln Navigator to Wife, but allocated responsibility for payment of the debt on the vehicle to Husband.  In so doing, the court added a $50,000 asset to Wife's side of the ledger and credited Husband with payment of a $96,986 debt.  Admittedly, this was the debt amount shown on Wife's asset and liability statement.  Yet Wife insists that the court should have used the more current figure listed on Husband's statement.

Husband argues that Wife contributed to this error because she presented the erroneous figure.  *See* TENN. R. APP. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").  Even so, we conclude Wife took reasonable steps to alert the trial court to this timing issue.  She clearly noted on her asset and liability statement that her debt figure represented the balance on the note as of March 31, 2020.  At trial in late 2021, she testified that the current balance was probably much lower, but this was the last information Husband had provided.

---

[2] Husband argues that Wife waived this issue because she never raised it in the trial court.  But we know of no legal authority, and Husband cites none, that requires a spouse to bring every error in an equitable division to the attention of the trial court or risk waiver on appeal.

[3] Husband valued the 401(k) account at $28,492 and the investment account at $337 on his asset and liabilities statement.  At trial, he confirmed the listed value of his 401(k) but stated that the current balance in the investment account was closer to $1,700.

7

Courts should value marital property "as of a date as near as possible to the date of entry of the order finally dividing the marital property." Tenn. Code Ann. § 36-4-121 (b)(1)(A). It was undisputed that Husband handled the family finances, including payment of this debt, during the marriage and the divorce proceedings. He presented a significantly lower, and presumably more current, number for this debt: $74,323. Because there was reliable proof at trial of a more current balance, we conclude that the court erred in using a figure that was well over a year old. *See Small v. Small*, No. M2009-00248-COA-R3-CV, 2010 WL 334637, at *12 (Tenn. Ct. App. Jan. 28, 2010).

3. Net Equity on the Marital Residence

Wife claims that the court erred in refusing to reopen the proof and revise its finding of the net equity in the marital residence after learning that Husband placed the mortgage in forbearance before trial without notice to Wife or the court. Because Wife must bear responsibility for this asserted error, we decline to grant her any relief. *See* TENN. R. APP. P. 36(a).

Shortly after trial, Wife moved to reopen the proof for the court to "consider and address" Husband's clandestine action. But at the motion hearing, she chose to pursue an alternate remedy. Wife's counsel argued that an order enforcing the financial status quo was "the best option for these parties" to avoid endless litigation. Following Wife's lead, the court entered an order declining to reopen the proof and reaffirming Husband's pendente lite financial obligations. Months later, Wife reversed course and asked the court to reopen the proof and revise its net equity figure to reflect Husband's conduct. Given Wife's previous decision to forego this exact remedy, she cannot complain that the court refused her renewed request.

4. Husband's Dissipation

Wife insists that the evidence preponderates against the court's dissipation finding. *See* Tenn. Code Ann. § 36-4-121(c)(5) (allowing courts to consider whether a spouse dissipated marital assets when fashioning an equitable division). "Dissipation" refers to "wasteful expenditures which reduce the marital property available for equitable distributions." *Id.* § 36-4-121(c)(5)(B). It involves "intentional or purposeful conduct" by a spouse who "uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down." *Altman v. Altman*, 181 S.W.3d 676, 681-82 (Tenn. Ct. App. 2005). Dissipation differs from discretionary spending, which is spending "typical of the parties' expenditures throughout the course of the marriage." *Larsen-Ball*, 301 S.W.3d at 235. Dissipation is often intended to "hide, deplete, or divert" marital property. *Id.* (quoting *Altman*, 181 S.W.3d at 682).

On the eve of trial, Husband disclosed the existence of a secret bank account he opened after the parties separated. He deposited over $700,000 into the secret account, but

only around $4,000 remained at the time of trial. As she did at trial, Wife views Husband's use of the marital funds in the secret account as dissipation. Proof at trial showed that Husband spent these funds without Wife's knowledge or consent. He made purchases for himself and the children.[4] He also paid his attorney's fees as well as some of the family's living expenses. The court did not deem this spending to be dissipation. But it viewed the sums Husband admittedly spent on extramarital affairs differently, finding he dissipated $15,300 on those pursuits.

We conclude that the evidence does not preponderate against the trial court's finding. Other than Husband's admission, Wife presented little or no evidence that Husband's spending from the secret account was wasteful. Just pointing to the missing funds was not enough. *See Burden v. Burden*, 250 S.W.3d 899, 919 (Tenn. Ct. App. 2007). Wife had the burden of proving that Husband's expenditures were atypical of the parties' spending during the marriage. *Id.* She did not meet that burden. *See Beyer v. Beyer*, 428 S.W.3d 59, 82-83 (Tenn. Ct. App. 2013) (concluding that Mother failed to meet her burden of proof because she failed to present any evidence showing that Father dissipated the funds in the parties' savings account).

5. Equalization Award

In sum, we conclude that the court erred in omitting two marital assets from the division and in determining the outstanding debt on the Lincoln Navigator. The net result is an unequal division. Husband maintains that these errors "are still too de minimis to amount to an inequitable division of the marital property requiring a reversal." We recognize that equitable does not necessarily mean equal. *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Still, the trial court expressly stated that it intended to equalize the division through an award of alimony in solido to Wife. So we deem it appropriate to modify the court's division. *See Griffin v. Griffin*, No. M2019-01113-COA-R3-CV, 2020 WL 4873251, at *7-8 (Tenn. Ct. App. Aug. 19, 2020).

Based on the court's disposition of other marital assets, Husband should retain the two omitted accounts, which means Husband will receive an additional $30,192 in marital assets. Husband's share of the marital debt is reduced by $22,663, to reflect the adjustment of the debt on Wife's vehicle. As a result, Husband's share of the marital estate has increased to $1,595,851. Wife only received $1,221,463 in the court's division. Because the trial court intended an equal division, we modify the final decree to reflect that Wife is awarded $187,194 in alimony in solido to equalize the marital estate. The terms and conditions for payment of the alimony in solido award remain the same.

---

[4] The court treated any items of property Husband purchased as joint assets.

9

C.

Wife challenges the amount of the alimony *in futuro* award. "[T]rial courts have broad discretion to determine whether spousal support is needed and, if so, the nature, amount, and duration of the award." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011). In exercising that discretion, the court considers a non-exclusive list of statutory factors found in Tennessee Code Annotated § 36-5-121(i). *Id.* at 109-10. Alimony decisions are factually driven and "involve[ ] the careful balancing of many factors." *Id.* at 105. The two most important factors are "the disadvantaged spouse's need and the obligor spouse's ability to pay." *Id.* at 110.

The court awarded alimony *in futuro* of $3,000 per month with a $600 a month increase after the oldest child's high school graduation. Wife claims that she established a need for at least twice that amount in her monthly income and expense statement. She faults the court for "arbitrarily" reducing her claimed expenses, which she views as reasonable considering the family's lavish lifestyle during the marriage.

We conclude that the evidence does not preponderate against the court's finding. Whether an expense is reasonable depends on the circumstances. *See Moscheo v. Moscheo*, 838 S.W.2d 226, 227-28 (Tenn. Ct. App. 1992). Here, the court found some of Wife's claimed expenses were excessive or unnecessary. The court's most significant adjustment was the elimination of a $3,215 monthly expense to maintain the family's former home as a long-term Airbnb rental. Wife admitted that she was currently losing $700 a month on this business endeavor. But she wanted to keep the property for sentimental reasons and hoped that it would eventually turn a profit. The court found that this was not a necessary expense for alimony purposes. An expense can be unreasonable when it is unnecessary. *See Cain-Swope v. Swope*, No. M2018-02212-COA-R3-CV, 2020 WL 865396, at *12 (Tenn. Ct. App. Feb. 21, 2020) (concluding that voluntary housecleaning expense could be excluded from calculation of reasonable expenses). The court also reduced or eliminated other expenses that it found to be excessive or unnecessary, including food, life insurance, and a line item for legal fees. None of these reductions appear to be extraordinary. Besides, Wife admitted at trial that these expenses were "a little bit high," and she did not expect to incur any ongoing legal fees after the divorce.

Wife also questions the amount of attorney's fees she was awarded as alimony in solido. *See Gonsewski*, 350 S.W.3d at 113 ("It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido."). Both parties used marital funds to pay their attorneys during the divorce. The court found Wife was entitled to reimbursement of 50% of the attorney's fees she had already paid and 100% of her unpaid fees. Given the equities here, Wife contends that Husband should pay 100% of both fee categories.

Wife misapprehends the court's ruling. The marital funds Wife used to pay her attorneys belonged equally to both spouses. The court ordered Husband to reimburse Wife

10

for her half of those funds.  Once he does so, Husband will have paid 100% of the paid fees.

D.

Wife also complains that the court denied her post-trial motion to reopen the proof to consider an inadvertently omitted debt.  *See* TENN. R. CIV. P. 54.02 (providing that an interlocutory order "is subject to revision at any time" before entry of a final judgment).  According to Wife, she borrowed $39,306.50 from her parents shortly before filing for divorce to pay the fees of a private investigator.  She submitted a copy of a promissory note executed in 2020 reflecting this debt.  She insisted that the investigator's services were relevant and necessary.  And the debt was past due.  But she overlooked this unpaid debt when preparing for trial almost two years later.

Whether to reopen the proof after trial is a decision left to the sound discretion of the trial court.  *Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991).  We will not set aside the court's decision without "a showing that an injustice has been done."  *Id.* (quoting *State v. Bell*, 690 S.W.2d 879, 882 (Tenn. Crim. App. 1985)).  Wife freely admitted that she could have presented this evidence at trial, but due to the complexity of the proceedings, she forgot.  Despite numerous post-trial motions, Wife did not bring the forgotten debt to the court's attention until ten months later.  At that point, the divorce had been pending for over two years.  And Husband objected to any further delay.  Given these facts, we discern no abuse of discretion in the court's refusal to reopen the proof to allow Wife to present evidence that she forgot to present earlier.

E.

Both parties seek an award of attorney's fees on appeal.  We have discretion to award reasonable attorney's fees to a prevailing party in a divorce action.  *See* Tenn. Code Ann. § 36-5-103(c) (2021).  In exercising our discretion, we consider: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors.  *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007).  Considering these factors, we decline to award attorney's fees on this basis to either party.

Husband also requests an award of attorney's fees for responding to Wife's initial brief, which substantially exceeded the allowable word limit for appellate briefs, and to her amended brief.  *See* TENN. R. APP. P. 30(e); TENN. SUP. CT. R. 46 § 3.02(a).  While we are sympathetic, we decline to grant Husband's request given Wife's limited means.

11

**III.**

We modify the final judgment to reflect that Wife is awarded $187,194 in alimony in solido to equalize the division of the marital estate.  Otherwise, we affirm.

_s/ W. Neal McBrayer_
W. NEAL MCBRAYER, JUDGE