IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 3, 2025

## ASHLEY HESTER AYERS v. JOHN ROBERT AYERS

**Appeal from the Circuit Court for Robertson County
No. 74CC5-2021-CV-300  Kathryn Wall Olita, Judge**

_____

### No. M2024-00813-COA-R3-CV
_____

This appeal arises from a divorce proceeding. Husband asserts that the trial court erred in assigning the entire amount dissipated to Husband. Husband further assigns error to the trial court's classification of an insurance settlement stemming from the theft of Husband's pre-marital vehicle. Discerning no reversible error, we affirm the judgment of the trial court as modified by this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed as Modified**

VALERIE L. SMITH, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and W. NEAL MCBRAYER, J., joined.

Brenton H. Lankford and Elizabeth A. Garrett, Nashville, Tennessee, for the appellant, John Robert Ayers.

Lewis A. Williams, Nashville, Tennessee, for the appellee, Ashley Hester Ayers.

## OPINION

### I.  FACTUAL BACKGROUND

The underlying facts are largely undisputed. The parties, Appellee Ashley Hester Ayers ("Wife") and Appellant John Robert Ayers ("Husband") were married on May 6, 2017, and have two minor children together. On November 10, 2021, Wife filed a complaint for divorce from Husband in the Robertson County Circuit Court. Wife alleged irreconcilable differences, inappropriate marital conduct, and cruel and inhumane treatment as grounds for divorce. Wife further alleged that the inappropriate marital conduct perpetrated by Husband rendered further cohabitation unsafe and improper.

Husband filed an answer and counterclaim for divorce on December 13, 2021. Husband admitted to verbally abusing Wife and further alleged that Wife was guilty of physical and verbal abuse rendering cohabitation improper. The trial was conducted over five days—November 28 and 29, 2023; January 23 and 24, 2024; and March 6, 2024.

As of the last date of trial, the parties had been married for almost seven years, though the parties separated in November of 2021. The record indicates that the parties enjoyed a high standard of living during the marriage. Over the course of the marriage, the parties accumulated substantial assets including the marital residence and farmland, the real property on which Husband's business operates, multiple vehicles, bank accounts, retirement assets, and farm equipment. Husband is a veterinarian whose practice, Root Animal Clinic (the "Clinic"), is primarily dedicated to surgery. Husband's gross monthly income is $77,500.00. Wife is a Certified Public Accountant who earns $16,584.43 per month.

Husband purchased the Clinic before the marriage for $680,000.00 in 2016. The trial court found that shortly after the marriage, the parties paid off the remaining $612,808.00 business loan using both Wife's separate premarital funds as well as marital earnings. Wife also used assets from the sale of her premarital condominium to eliminate $205,000.00 of Husband's student loan obligations. The Clinic increased in value during the marriage and as of December 31, 2022, it was valued at $2,136,000.00 excluding Husband's personal goodwill. The trial court found that the appreciation of the business constituted marital property, though the underlying enterprise remained Husband's separate asset.[1] This is in part due to Wife's contributions to Husband's student loan obligations and payment of portions of the loan on the Clinic.

Prior to the separation, Wife's paycheck was routinely deposited into a joint banking account, and Husband transferred funds into that account "frequently" and "as needed" to cover recurring marital obligations. After the separation in November 2021, the court found that Husband ceased making consistent deposits yet began withdrawing substantial sums from the marital bank account. For example, after the parties separated, Husband wrote checks to himself totaling $507,031 that were not deposited into any disclosed bank account and for which no marital purpose was provided. The court contrasted this with the parties' pre-separation habits, finding that in similar situations such checks were typically deposited into identifiable marital accounts. Though Husband testified that these amounts represented tithing to local churches and cash charitable giving, subpoenas issued to the churches he identified revealed no donations from him, and he claimed no charitable deductions on the parties' 2022 tax filings. The court further found that the parties had not

---

[1] Specifically, the trial court noted that "[i]t would appear that Husband agrees that the increase in the value of the practice during the marriage may properly be considered as marital if the Court determines that Wife substantially contributed to its preservation and appreciation." The trial court found that Wife substantially contributed to the Clinic's preservation and appreciation.

- 2 -

historically engaged in significant cash tithing during the marriage. Ultimately, the trial court found Husband's testimony "that nearly half the unaccounted-for checks were cash tithes" not credible.

The trial court also found that Husband's credit card spending "increased exponentially" after the separation, including more than $12,000 in Nashville Predators hockey tickets and approximately $15,000 in University of Tennessee football tickets. Husband testified that the tickets represented a business investment to give as gifts to other veterinarians who refer patients to the Clinic, which he previously did on a smaller scale. Ultimately, the trial court found that Husband's purchase of tickets used as gifts for referrals, while ill-advised, was a business expense not entirely atypical of the marriage.

Husband's increased spending post-separation also included $5,140.03 in dining and entertainment expenses, some associated with individuals he dated after the parties separated. Three of Husband's four post-separation extra marital partners testified to having been taken on dates and outings during May to September 2022 by Husband. The court noted that these expenditures bore no marital purpose. After considering the evidence, the trial court determined that Husband dissipated a total of $512,171.03 in marital funds, comprised of the unreconciled checks and additional discretionary post-separation spending. The court further found that Husband failed to meet "his burden of producing evidence to show that all of his post-separation expenditures were appropriate."

In distributing the marital estate, the trial court assigned the full dissipation amount to Husband. To effectuate an equitable distribution of the marital estate, Wife received an additional $512,171.03 credit—treated as an "above-the-line" adjustment—in the allocation of equity in the marital residence. The court observed that even after accounting for the dissipation, the overall division of property remained equitable and nearly equal.

Another asset in dispute on appeal is a roughly $40,000 insurance settlement Husband had yet to receive at the time of trial after his 2015 Ford F-350 truck—his premarital vehicle—was stolen during the course of the litigation. After Husband's vehicle was stolen, he used marital funds to purchase a replacement vehicle. However, Wife's statement of assets and liabilities filed with the trial court on November 20, 2023, proposed that the $40,823.00 insurance settlement should be considered Husband's separate property. The trial court, however, classified the insurance settlement as marital property. The settlement funds were therefore included in the marital estate and assigned to Husband along with his replacement vehicle, a 2023 Ford F-350.

The trial court entered a Memorandum Opinion and Final Order on May 8, 2024, granting Wife a divorce on the grounds of inappropriate marital conduct. The trial court noted that its division of the marital estate was "equitable and nearly equal as a result of weighing the relevant factors enumerated in [Tennessee] Code [Annotated] [section] 36-4-121(c)[.]" Husband filed a timely notice of appeal with this Court on June 4, 2024.

## II.    ISSUES

Husband raises two issues on appeal, which we have slightly restated:

1. Whether the trial court erred by requiring Husband to reimburse Wife $512,171.03 for the total amount of his dissipation.

2. Whether the trial court erred in classifying the insurance settlement as marital property.

Wife raises two additional issues for review:

3. Whether Husband's request for attorney's fees on appeal is proper as he failed to raise his request for appellate attorney's fees as a specific issue for review.

4. Whether Wife is entitled to recover her attorney fees and expenses incurred on appeal.

## III.    STANDARD OF REVIEW

Our review of the trial court's findings of fact is *de novo* upon the record with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Allstate Ins. Co. v. Tarrant*, 363 S.W.3d 508, 512 (Tenn. 2012). The evidence preponderates against the trial court's findings of fact when it supports another finding "with greater convincing effect." *Hardeman Cnty. v. McIntyre*, 420 S.W.3d 742, 749 (Tenn. Ct. App. 2013) (internal citation omitted). Appellate review of a trial court's conclusions of law is *de novo* with no presumption of correctness. *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 204 (Tenn. 2012). Questions related to the classification of assets present questions of fact, which we also review *de novo* with a presumption of the correctness, unless the evidence preponderates otherwise. *Long v. Long*, 642 S.W.3d 803, 818 (Tenn. Ct. App. 2021) (citing Tenn. R. App. P. 13(d)).

The division of marital property in an "equitable" manner does not require that the trial court divide it equally. *Luplow v. Luplow*, 450 S.W.3d 105, 109-10 (Tenn. Ct. App. 2014) (citing *Robertson v. Robertson*, 76 S.W.3d 337, 341 (Tenn. 2002)). Furthermore, an equitable division "is not achieved by a mechanical application of the statutory factors, but rather by considering and weighing the most relevant factors in light of the unique facts of the case." *Batson v. Batson*, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). A trial court is given "wide latitude" in its equitable division of a marital estate, and this Court defers to such division unless it is inconsistent with the relevant factors in Tennessee Code Annotated section 36-4-121(c) or is not supported by a preponderance of the evidence.

*Kinard v. Kinard*, 986 S.W.2d 220, 230 (Tenn. Ct. App. 1998). While the trial courts have broad discretion in dividing marital property, that discretion is not unfettered. There must be an explanation rooted in statutory analysis to support the division of assets and allocation of debts. *Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007). The fairness of the trial court's division should be "inevitably reflected in its results." *Id.*

## IV. DISCUSSION

### 1. Dissipation

Husband argues on appeal that the trial court erred by requiring him to reimburse Wife for the total value of his dissipation from the parties' marital estate. Husband does not dispute the trial court's finding that he dissipated $512,171.03 from the marital estate; however, Husband assigns error to the trial court's allocation of the dissipation. Husband asserts that the trial court made a clear error in assigning him the entirety of the dissipation because both parties maintained an interest in the estate. Wife argues that the overall division of the marital estate is equitable and should not be disturbed.

Tennessee Code Annotated section 36-4-121 governs a court's: (1) classification of property as either marital or separate; and (2) equitable division of the marital estate. Tennessee law requires that marital property be divided equitably, not necessarily equally, upon divorce. Tenn. Code Ann. § 36-4-121(a)(1); *Brown*, 913 S.W.2d at 168 ("Trial courts have wide latitude in fashioning an equitable division of marital property. Their decisions must be guided by the factors in Tenn. Code Ann. § 36-4-121(c).") (internal citations omitted). Equity in the dissolution context considers the unique circumstances of each party and aims to produce a fair result. We defer to the decision of the trial courts in reviewing equitable divisions of marital assets unless their decisions are inconsistent with the factors in Tennessee Code Annotated section 36-4-121(c) or are not supported by the preponderance of the evidence. *Barnhill v. Barnhill*, 826 S.W.2d 443, 449-50 (Tenn. Ct. App. 1991). These factors in Tennessee Code Annotated section 36-4-121(c) include:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) In determining the value of an interest in a closely held business or similar asset, all relevant evidence, including valuation methods typically used with regard to such assets without regard to whether the sale of the asset is reasonably foreseeable. Depending on the characteristics of the asset, such considerations could include, but would not be limited to, a lack of marketability discount, a discount for lack of control, and a control premium, if any should be relevant and supported by the evidence;

(11) The amount of social security benefits available to each spouse; and

(12) Such other factors as are necessary to consider the equities between the parties.

Tenn. Code Ann. §§ 36-4-121(c)(1)-(13) (July 1, 2017 to Mar. 30, 2022). The equitable division of property requires findings regarding each party's financial condition, contributions, and future prospects. *See Kerley v. Kerley*, No. E2022-01206-COA-R3-CV, 2024 WL 3443463, at *1 (Tenn. Ct. App. July 17, 2024) (vacating a final decree and remanding for further findings because the trial court "failed to delineate its analysis of the

- 6 -

required statutory factors" as to the distribution of marital assets and the award of alimony).

A party's dissipation of marital or separate property is one of many factors a trial court may take into consideration in making an equitable division of a marital estate. Tenn. Code Ann. § 36-4-121(c)(5)(A). While there is no statutory definition of dissipation, the term typically refers to the use of marital property for a purpose unrelated to the marriage, often to "hide, deplete, or divert" marital property after a marriage is irretrievably broken. *Larsen-Ball v. Ball*, 301 S.W.3d 228, 235 (Tenn. Ct. App. 2010). "The concept of dissipation is based on waste." *Altman v. Altman*, 181 S.W.3d 676, 681 (Tenn. Ct. App. 2005). "Dissipation of marital property occurs when one spouse uses marital property, frivolously and without justification, for a purpose unrelated to the marriage and at a time when the marriage is breaking down." *Id.* at 681-82 (Tenn. Ct. App. 2005). As this Court has explained:

> [T]he allegedly improper or wasteful expenditure or transaction must be considered in the context of the marriage as a whole, and it must be weighed along with all the other relevant factors in the case. The factors that courts most frequently consider when determining whether a particular expenditure or transaction amounts to dissipation include: (1) whether the expenditure benefitted the marriage or was made for a purpose entirely unrelated to the marriage; (2) whether the expenditure or transaction occurred when the parties were experiencing marital difficulties or were contemplating divorce; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert a marital asset.

*Id.* at 682 (internal citations and footnote omitted). In determining whether dissipation has occurred, the court "must distinguish between dissipation and discretionary spending." *Larsen-Ball*, 301 S.W.3d at 235. While discretionary spending may be ill-advised, it "is typical of the parties' expenditures throughout the course of the marriage." *Id.* Expenditures that constitute dissipation, on the other hand, are so far removed from normal expenditures that they can be characterized as wasteful or self-serving. *See Watson v. Watson*, 309 S.W.3d 483, 490 (Tenn. Ct. App. 2009)

Here, the trial court awarded approximately 55% of the over $4.6 million estate to Wife and 45% to Husband, which resulted in roughly a $420,000.00 disparity. Husband argues that the size of the disparity renders the trial court's distribution inequitable. However, the trial court's assignment of the dissipation to Husband is not a "mathematical error" as Husband argues. Husband invokes this Court's precedent in *Holdsworth v. Holdsworth*, No. W2013-01948-COA-R3-CV, 2015 WL 3488929 (Tenn. Ct. App. June 3, 2015), to assert that the amount Husband dissipated should be divided equally between the parties. In *Holdsworth*, the trial court determined that checks the husband wrote to an extra marital partner constituted dissipation. *Id.* at *9. The trial court subsequently ordered the husband to reimburse wife for the full amount dissipated. *Id.* We noted that "[t]he trial

court's award ignore[d] the fact that [h]usband also had an interest in the money." *Id.* (citing *Odom v. Odom,* No. E2007–02250–COA–R3–CV, 2008 WL 4415429, at *8, (Tenn. Ct. App. Sept. 30, 2008)). We further noted that "because the trial court divided the parties' marital assets equally . . . [h]usband is entitled to one-half of the assets he dissipated." In contrast, the trial court here did not divide the estate equally. Rather, the trial court awarded Wife "$512,171.03 in the form of an above the line adjustment to her share of the equity in the marital residence as a result of Husband's dissipation of that amount of money from the marital estate." This is a clear indication that the trial court intended to distribute the estate equitably rather than equally.

Further, this Court recently concluded that divisions of marital estates were equitable even though one party received a more significant portion of the estate than the other spouse. *See Perkins v. Sloane*, No. M2024-00756-COA-R3-CV, 2025 WL 1100057, at *10 (Tenn. Ct. App. Apr. 14, 2025) (affirming an equitable division where the husband received 80% of the marital estate and the wife received 20%); *Harris v. Harris*, No. E2023-00061-COA-R3-CV, 2023 WL 8716469, at *9 (Tenn. Ct. App. Dec. 18, 2023) (adjusting the division of the marital estate to award the husband 75% and the wife 25%).

The trial court expressly credited Wife's testimony over Husband's concerning the dissipation of marital assets post-separation, and our reading of the trial transcript supports this credibility finding. The issue of dissipation is "a question that often hinges on the trial court's assessment of the demeanor and credibility of witnesses at trial[.]" *Ellis v. Ellis*, No. E2020-00869-COA-R3-CV, 2022 WL 3724768, at *14 (Tenn. Ct. App. Aug. 29, 2022). Moreover, we will not disturb a trial court's credibility finding absent clear and convincing evidence to the contrary. *See Kelly*, 445 S.W.3d at 692.

A division of marital property is not rendered inequitable simply because it is not precisely equal. *Robertson,* 76 S.W.3d at 341; *Cohen v. Cohen,* 937 S.W.2d 823, 832 (Tenn. 1996). One of the many factors for a trial court to consider when distributing marital property is the "contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property." Tenn. Code Ann. § 36-4-121(c)(5)(A) (July 1, 2017 to Mar. 30, 2022). Thus, we will ordinarily defer to the trial court's division of the parties' marital estate unless it is inconsistent with the factors in Tennessee Code Annotated section 36-4-121(c) or is not supported by a preponderance of the evidence. *Brown*, 913 S.W.2d at 168; *Mahaffey v. Mahaffey,* 775 S.W.2d 618, 622 (Tenn. Ct. App. 1989); *Hardin v. Hardin,* 689 S.W.2d 152, 154 (Tenn. Ct. App. 1983).

As previously stated, the division of the marital estate is not a "mechanical process," and a court has broad discretion when considering the weight it will place on any given factor. *See Flannary*, 121 S.W.3d at 650. The trial court's division of the marital assets, including the assignment of the dissipation, is consistent with the factors

in Tennessee Code Annotated section 36-4-121(c) and is supported by the preponderance of the evidence. The judgment of the trial court on this issue is, therefore, affirmed.

    2.  <u>Classification of Marital Property</u>

Husband argues that the trial court committed error by misclassifying an insurance settlement—that resulted from an asset of Husband's pre-marital, separate property—as marital property. Husband contends that as the insurance settlement stems from his separate property that was stolen, the insurance settlement remains his separate property. Wife contends that the trial court correctly classified the asset as marital property, but even if the trial court misclassified the insurance settlement payment as marital property, any misclassification would not render the distribution inequitable.

Tennessee Code Annotated section 36-4-121 classifies as "marital property" "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing and owned by either or both spouses as of the date of filing of a complaint for divorce[.]" Tenn. Code Ann. § 36-4-121(b)(1)(A) (July 1, 2017 to Mar. 30, 2022). Marital property also includes "income from, and any increase in the value during the marriage of, property determined to be separate property in accordance with subdivision (b)(2) if each party substantially contributed to its preservation and appreciation." Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) (July 1, 2017 to Mar. 30, 2022). "Separate property" is defined as:

> (A) All real and personal property owned by a spouse before marriage, including, but not limited to, assets held in individual retirement accounts (IRAs) as that term is defined in the Internal Revenue Code of 1986 (26 U.S.C.), as amended;

> (B) Property acquired in exchange for property acquired before the marriage;

> (C) Income from and appreciation of property owned by a spouse before marriage except when characterized as marital property under subdivision (b)(1);

> (D) Property acquired by a spouse at any time by gift, bequest, devise or descent;

> (E) Pain and suffering awards, victim of crime compensation awards, future medical expenses, and future lost wages; and

> (F) Property acquired by a spouse after an order of legal separation where the court has made a final disposition of property.

Tenn. Code Ann. § 36-4-121(b)(2) (July 1, 2017 to Mar. 30, 2022).

Assets acquired during a marriage are presumed to be marital property and a party who disputes this classification has the burden of proving by a preponderance of the evidence that the asset is separate property. *See Owens,* 241 S.W.3d at 486. A party may rebut this presumption with evidence of circumstances or communications clearly indicating an intent that the property remain separate. *See Batson v. Batson,* 769 S.W.2d 849, 858 (Tenn. Ct. App. 1988). Income from and the appreciation in value of a spouse's separate property can become marital property where both spouses have substantially contributed to its preservation and appreciation. Tenn. Code Ann. § 36-4-121(b)(1)(B)(i) (July 1, 2017 to Mar. 30, 2022). Those contributions may be direct or indirect. Tenn. Code Ann. § 36-4-121(b)(1)(D) (July 1, 2017 to Mar. 30, 2022).

It is undisputed that Husband purchased and financed the 2015 Ford F-350 truck prior to the parties' marriage. Testimony from the multiple hearings in this case demonstrated that Husband paid the auto insurance using marital funds and continued to do so until the trial court entered final judgment. Our review of the record did not uncover testimony regarding whether the stolen truck was titled to, or even used by, both parties during the marriage. Wife's statement of assets and liabilities filed with the trial court on November 20, 2023, proposed that the insurance settlement be considered Husband's separate property. While the trial court's order includes a thorough and meticulous analysis concerning whether the animal clinic should be considered transmuted marital property, the order does not perform the same analysis as it pertains to the insurance settlement. There is no discussion concerning whether Wife contributed to the truck's preservation and appreciation before it was stolen.

We agree with Husband that the insurance settlement should not have been classified as marital property. The judgment of the trial court is modified to reflect that the $40,000 insurance settlement is Husband's separate property. This reclassification does not render the overall distribution of the marital estate—valued at over $4.6 million—inequitable as our modification represents less than one percent of overall value of the estate. Accordingly, we do not disturb the trial court's distribution of the marital estate in light of the reclassification. We affirm the judgment of the trial court as modified by this Opinion.

3. Attorney's Fees

Each party requested attorney's fees on appeal. "The determination of whether to award attorney's fees on appeal is within the sole discretion of the appellate court." *Trezevant v. Trezevant*, 568 S.W.3d 595, 641 (Tenn. Ct. App. 2018) (citing *Moses v. Moses*, No. E2008-00257-COA-R3-CV, 2009 WL 838105, at *10 (Tenn. Ct. App. Mar. 31, 2009)). The Tennessee appellate courts set forth factors that should be applied when

considering a request for attorney's fees incurred on appeal. "These factors include the ability of the requesting party to pay fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered." *See Stratienko v. Stratienko*, 529 S.W.3d 389, 413 (Tenn. Ct. App. 2017) (internal citations omitted).

We respectfully decline to award either party attorney's fees on appeal. Each party possesses the ability to pay their respective attorney's fees based on the assets awarded in the divorce. There is no indication that Husband pursued this appeal in bad faith. The marital estate was valued at approximately $4.6 million with each party receiving substantial assets to pay the attorney's fees incurred on appeal. Accordingly, we determine that this is not an appropriate case for an award of attorney's fees on appeal. *See Parris v. Parris*, No. M2006-02068-COA-R3-CV, 2007 WL 2713723 at *13 (Tenn. Ct. App. Sept. 18, 2007) ("[I]t is in the sole discretion of this court whether to award attorney's fees on appeal.").

## V.     CONCLUSION

We affirm the judgment of the trial court as modified by this Opinion. Costs of the appeal are taxed to Appellant, John Robert Ayers, for which execution may issue if necessary.

s/ Valerie L. Smith
VALERIE L. SMITH, JUDGE

- 11 -